Norman GRADSKY, George Levine, Howard W. Meadors, Gertrude Hogue, B. J. Gradsky, Robert B. Roberts, Alfred Schiff, Robert Grene, Leonard L. Glaser and E. E. Gibbons, Appellants,

v.

UNITED STATES of America, Appellee.

No. 19974.

United States Court of Appeals Fifth Circuit.

March 11, 1965.

Rehearings Denied April 9, 1965.

Milton E. Grusmark, Miami Beach, Fla., for appellant Leon Gradsky.

Thomas F. Call, Hugh W. Darling, Los Angeles, Cal., A. Allen Saunders, New York City, Sam E. Murrell, Jr., Orlando, Fla., Max Lurie, Larry J. Hoffman, Fuller Warren, Verne L. Freeland, E. David Rosen, Miami, Fla., for appellants.

Mahlon M. Frankhauser, Asst. Director, SEC, Washington, D. C., Arnold D. Levine, Special Asst. U. S. Atty., Tampa, Fla., William A. Meadows, Jr., U. S. Atty. (J. Michael Gottesman, Atty., Securities and Exchange Commission, Washington, D. C., of counsel), for appellee.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and GROOMS, District Judge.

TUTTLE, Chief Judge:

This is an appeal by ten codefendants from their convictions in a jury trial for violating the anti-fraud provisions of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), and the Mail Fraud Statute, 18 U.S.C.A. § 1341, and conspiring to violate those laws, 18 U.S.C.A. § 371. The indictment charged a scheme under which the defendants sold to the public notes of Credit Finance Corporation, which were to return 12%, and later 8%, interest. This interest was stated to be produced by C.F.C.'s income from

**150**

automobile loans and real estate transactions. The alleged scheme was that, rather than carrying out the income generating plan represented to the investors, the principals behind C.F.C. were to, and did, divert investors' funds to themselves for their personal use.

Of the ten defendants, Norman Gradsky, Robert Grene, and Leonard Glaser, do not challange the sufficiency of the evidence against them. We conclude that there is no substantial issue as to whether there was sufficient evidence to sustain a verdict of guilt as to Mrs. B. J. Gradsky, the wife of Norman Gradsky, and George Levine, who took control of the company in July, 1960. There remain questions as to the sufficiency of the evidence to warrant submission of the cases of the other five defendants to the jury and a number of alleged errors in rulings by the trial court which will be dealt with below.

 Gertrude Hogue has abandoned all contentions on this appeal except that there was not sufficient evidence to tie her in to the scheme or the false representations to warrant the trial court's submission of her case to the jury. She makes an appealing case because, although she was named as a vice president, it is apparent that she profited from the operation only to the extent of receiving a modest salary with a small bonus. However, we are compelled to conclude that such appeal as she could make on these grounds were properly addressed to the jury, and may still be addressed to the trial court in a motion to reduce sentence under Rule 35, F.R.Cr.P. We conclude that it can not prevail here in light of the clear evidence in the record that would warrant a jury's finding that Mrs. Hogue herself sold notes of the fraudulent company and in so doing repeatedly misrepresented the nature and financial condition of the organization. There is evidence from which the jury could determine that she knew her representations were false and that in submitting for inspection copies of the company's financial

statement, she was lending her aid to the fraud.

██ Appellants Gibbons, Schiff, Roberts and Meadors were all salesmen for C.F.C., and all made misrepresentations about the nature and financial condition of the company to investors. The question of sufficiency of the evidence as to these parties turns on their knowledge that their statements were untrue. Gibbons worked for the company for only two months. However, during that time he was its treasurer and served as an auditor. Schiff was in C.F.C.'s employ longer than Gibbons. Among his false statements to investors was the statement that C.F.C. was insured under federal and state laws. Roberts was a vice president of C.F.C.; he too represented that C.F.C.'s interest rate was insured. Meadors was also a C.F.C. vice president and was manager of its Orlando office; he also misrepresented the nature of the Florida regulation of C.F.C. and he falsely told an investor that he had his own money in the company. While it was not shown that any of these four persons diverted any of the company's money to their own use, other than the compensation they drew as salesmen, the jury was authorized to find that when they represented the facts concerning the company's position which turned out to be false, their relationship with the company was such that they actually knew of the falsity of the misrepresentations. Peel v. United States, 5 Cir., 316 F.2d 907.

The Court concludes, therefore, that there was sufficient evidence as to each of the appellants to permit the jury to determine whether they were guilty of some of the offenses as charged beyond a reasonable doubt.

██ Most of the appellants make their strongest claim of error here on language in the charge of the trial court, which they say amounted to comment by the trial court on the defendants' failure to take the witness stand. The challenged instruction, to which no objection was made on the trial, follows:

"Now then it is my duty to tell you that the indictment that I mentioned in the case there is no evidence whatever * * * It has no probative force. When I say probative force I mean proof.

"The only testimony you will consider will be the testimony from the lips of witnesses given under the supervision of the Court or by documentary proof and no other.

"The indictment is a mere formal charge. The Grand Jury heard only one side. The Grand Jury returned an indictment, and the Grand Jury, of course, its thought was unless there was an answer to it * * * They should be put up on their trial * * * and unless they answered they should be convicted.

"And so that is not testimony as having any probative force whatsoever."

Appellants rely on Perez v. United States, 5 Cir., 1961, 297 F.2d 12, in support of their contention that this charge amounted to prejudicial error. The Perez case is not apposite here. There, the government relied upon the presumption statute, 21 U.S.C.A. § 176a,[1] which in effect provided a statutory presumption of guilt of possession of marijuana absent an explanation by the defendant. In that case the trial court had properly charged the jury on the burden of proof and the presumption of innocence, but the jury returned to the courtroom and requested that the relevant parts of the Code be read to it. The court read the section referred to above, whereupon *both government counsel and defense counsel* requested that the court add that such explanation could come through other witnesses and that the defendants were not themselves required to take the stand. The judge refused to charge in that respect, and

we reversed on the ground that this was prejudicial error.

The situation is quite different here. In the first place, the reference to what the Grand Jury thought is really innocuous. It was part of the judge's effort to tell the jury that the fact that the Grand Jury had made the charge and thought that the defendants were guilty unless they came up with some answers to the charge, was really not to be considered by the jury as having any probative force whatever. In point of fact the defendants did make an answer to the indictment when they entered their pleas of not guilty. There was nothing in the charge that indicated there was an obligation on the defendants to take the witness stand themselves. If there had been any such implication, it was completely answered by the subsequent charge of the Court expressly stating:

"The law is such that a defendant * * * an accused person in the federal court is not required to take the witness stand. He doesn't have to do anything. So that the very fact that there is no testimony on the part of the defendants would not justify it in drawing any adverse inferences.

"On the contrary, they were within their rights in not testifying in the case.

"So you will give no consideration whatever to the fact that the defendants, or any of them, did not testify in the case."

In the Perez case we stated that when the trial court charged the presumption statute, it was incumbent on the trial court to reiterate or call again to the jurors a charge such as was actually given in this case. We conclude that there is no merit in the contention that the trial court or government counsel in any way prejudiced the defendants'

---

1. This statute provides in part as follows: "Whenever on trial for a violation of this subsection, the defendant is shown to have had or to have had the marijuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

rights by any reference to defendants' failure to testify on their own behalf.

■■ The second important criticism that is made of the trial court's conduct of the trial devolves upon the absence from the courtroom during the trial of records of a company called Security Guaranty Corporation, the corporation to which Mrs. B. J. Gradsky transferred all the stock of C.F.C. in April, 1960. It is plain that these records were available in the government's possession in Orlando, the place of the trial, for most of the period of the trial, but they were later taken elsewhere by a postal inspector for proper use by the United States. It is not clear from the record presented to us whether counsel for any of the defendants specifically moved for the production of these records and that such motion was pressed to a conclusion before the trial court.[2]

In any event, it is not shown that the absence of these records in any way prejudiced the appellants. The government expert, the accountant Callahan, whose summaries and charts of C.F.C.'s finances were among the government's most telling evidence, stated that he did not rely on records of S.G.C. in making his summaries. It is not disputed that the records of C.F.C. were in court and available to the appellants for inspection and for purposes of cross-examination. We think under the circumstances, the case of United States v. Consolidated Laundries Corp., 2 Cir., 1961, 291 F.2d 563, does, therefore, not support the appellants' contention in this regard. The summaries were, of course, admissible. See Greenhill v. United States, 5 Cir., 298 F.2d 405, cert. denied, 371 U.S. 830, 83 S.Ct. 25, 9 L. Ed.2d 67 (1962).

■■ A further charge of error relates to the refusal of the trial court to grant an extra peremptory challenge in light of the responses made by one juror, a Mrs. Lewis. Upon *voir dire*, this lady who had never before been a juror, indicated, in response to a question by counsel, that she thought both sides should come forward with evidence. However, when counsel called her attention to the fact that the defendants do not have to "say a single word in this case," Mrs. Lewis said, "Oh! I see." She was then asked by counsel, "You understand that the burden is upon the government to establish their case?" And she answered, "Oh. Yes, I see what you mean." Responding to a question by counsel, "Then it is your view that both sides should come forward with evidence in this criminal case?" She answered, "Well, I thought that was the procedure. I never served." She further answered the question, "Do you have a firm conviction in your mind that my client, Mr. Meadors, should come forward with evidence in this case if he is on trial?" She answered, "I think so." Thereupon the court interposed and stated, "She doesn't know about those things."

If these were proper questions by counsel to be asked on a *voir dire*, which we seriously doubt, all that was elicited from this prospective juror was that she did not know the rules of law as to which the trial court would later charge the jury. Counsel's effort to educate her as to the right to remain mute apparently had not quite succeeded at the time when counsel then made a motion for sustaining a peremptory challenge. There is no indication that Mrs. Lewis did not fully understand and follow the trial court's subsequent instruction when the time for instructing her on the law occurred.

We conclude that there is no merit in the contention that this juror's lack of knowledge as to the presumption of innocence and right not to testify before the trial started required the granting of additional peremptory challenges. Moreover, there appearing to be no evidence of conflicts of interest among the defendants, we can not hold that there was an abuse of discretion by the trial court in not exceeding the ten peremp-

---

2. It is clear that the motion referred to by counsel in their brief did not contain a motion for production of these records. We have been unable to find any other.

tory challenge rule of Rule 24(b), Federal Rules of Criminal Procedure.

 Appellants argued that a proper foundation was not laid for the admission of C.F.C.'s books under the Federal Shop Book Rule, 28 U.S.C.A. § 1732. While authentication of each entry and identification of the persons making them was not presented, there was testimony by various employees of the corporation that the entries and records in question were made in the ordinary course of C.F.C. business. The requirements of this statute which was designed to facilitate proof of business records seem to have been fully met here. The criticisms were such as could be argued as to the weight of the evidence rather than to its admissibility. See Carroll v. United States, 9 Cir., 1963, 326 F.2d 72, and Taylor v. United States, 5 Cir., 96 F.2d 16.

This case required five weeks to try. As indicated, there were ten defendants. There were ten counts to the indictment. It is inevitable in such a situation that each of the defendants, when he has been convicted by the jury, seeks, on appeal, to work a reversal on the theory that a particular bit of evidence introduced on the trial, directly implicating another defendant, made no mention of the one now complaining. Typical of this is the contention made by so many of the appellants that they ought not to be bound by the falsity of the books since they had nothing to do with keeping the books. Appellant Roberts, for instance, says, "Yet the evidence was undisputed that Roberts made no entries therein or had any connection or knowledge thereof. The law is well established that such books and records are admissible only against corporate offices with access and control thereof, who dominated and controlled the company, or if they made or supervised the entries therein. Such books and records do not constitute competent evidence against one merely because he is connected with a company."

 Certainly it is the law that such books and records do not constitute competent evidence against one *merely because he is connected with the company,* but such was not the situation of Roberts. In the first place he was a vice president of the company; in the second place, he stated to victims that the funds loaned by the victims were "insured" and he told victims that the company owned a large shopping center, which was making lots of money; he also said the company's funds were invested in automobile paper and real estate, and "just about everything that you could lay money on." When a participant undertakes to persuade an investor to turn his money over to him, as Roberts did, and in order to make the deal makes false statements touching on the assets of the corporation, and is, thus, making a representation concerning what is shown by the books, the jury is free to draw the inference that he is as responsible for the books and records of the company as if he had made the entries therein.

This illustration is merely one of many contentions made by appellants here in which a complete misconception of the responsibility which an individual has towards the entire operation once he is found by the jury to be a participant in the scheme.

 We have carefully considered each of the assignments of error, consisting largely of alleged errors in the giving or refusing to give proper elements of the charge and the admission of evidence against individual defendants and find that most of them are based upon this lack of appreciation of the degree to which a jury may infer participation on the scheme, participation in the conspiracy, and responsibility for the acts of joint conspirators. We conclude that the appellants had a fair trial. They were represented by able counsel. The fact that the scheme and conspiracy, found by the jury to have been set up to prey on the investing public was a complex and involved one, can not be permitted of itself to frustrate a trial where any slight errors or inconsistencies that may creep in are,

as we find them to be here, without prejudice to the accused persons. See Greenhill v. United States, 5 Cir., 298 F.2d 405.

■ We have stated above that there was ample evidence to submit to the jury the question of guilt of the appellants Gibbons, Schiff, Roberts and Meadors as to some of the charges. We have, however, carefully read the testimony with respect to these defendants and conclude that as to each of them whose appeals are still pending here, Gibbons, Schiff and Roberts,[3] their tenure with the company and thus their involvement in the fradulent scheme was so short in point of time and the number of representations actually by them made were so restricted that we conclude since, too, they had no proprietary interest in these businesses, there was not sufficient evidence to warrant the jury's finding guilt beyond a reasonable doubt as to those counts which charged them with having participated in substantive crimes at a time when they were not actually employed by C.F.C.

The record is clear that Schiff was an employee of C.F.C. no longer than from the latter part of July, 1960, to the end of September of that year. We, therefore, conclude that his conviction of counts one, three, four, five, six and seven must be set aside. Roberts was a part-time employee of C.F.C. between August, 1959, and April, 1960. We conclude, therefore, that his conviction on counts one, two, four, five, seven and nine must be set aside. Gibbons was an employee of the company for approximately two months—from the end of December, 1959, to the end of February, 1960. His conviction on counts one, two, three, four, five, seven, eight and nine are, therefore, vacated and set aside.

■ We fully recognize the principle asserted by this Court in Sherwood v. United States, 5 Cir., 300 F.2d 603, that all who, with criminal intent, join themselves even slightly to the principal scheme, are subject to the statute. See Kaplan v. United States, 2 Cir., 18 F. 2d 939, but with respect to the substantive counts here charged there must be sufficient evidence of the intent of the separate defendants to participate in the scheme, and the acts done in furtherance thereof, to warrant submission of the separate charges to the jury.

Here, we find insufficient evidence to warrant the submission of the charges against the three named appellants which we have now determined should be vacated.

The judgments are affirmed as to all of the appellants except Roberts, Schiff and Gibbons. The judgment against Roberts is affirmed as to the sentences imposed on counts three, six, eight and ten. The sentences against Roberts on counts one, two, four, five, seven and nine are set aside.

The judgment against Schiff is affirmed as to the sentences imposed on counts two, eight, nine and ten. The sentences against Schiff on counts one, three, four, five, six and seven are set aside.

The judgment against Gibbons is affirmed as to the sentences on counts six and ten. The sentences against Gibbons on counts one, two, three, four, five, seven, eight and nine are set aside.

The case is remanded for further proceeding not inconsistent with this opinion and judgment.

---

3. Meadors' appeal was dismissed for want of prosecution. We think it not inappropriate, however, to suggest that the relief afforded to the other three short-time employees of C.F.C. may be considered by the trial court upon the presentation by Meadors of a proper motion to reduce sentence under Rule 35.