Ernest Leroy IVEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21596.

United States Court of Appeals Fifth Circuit.

May 4, 1965.

Rehearing Denied June 4, 1965.

an injection of a part of it, and, since he was an addict and under suspicion, he let his wife bring back into the United States the remainder, which she did.

Agent Stevens substantially corroborated Agent Blackwell's statement of the confession made by the appellant. Agent Miley also corroborated it to some extent. However, appellant on the stand denied having made any statement at all to Customs Agent Blackwell or to any other Customs Agent.

In his confession Ivey is alleged to have said that he had received the injection in his thumb. This part of his confession is corroborated by what seemed to be a needle mark in his thumb, but this of course does not show importation, which is the crime with which he is charged. The only corroboration for his confession of participating in the importation is the alleged statement of his wife.

With respect to her statement, Customs Agent Miley testified that he saw Mrs. Ivey and Margaret Sue Smith return to the United States in the Oldsmobile in which they had gone to Mexico and drive a few blocks down the street and park. He said he approached the car and asked them what they were doing there. He said Mrs. Ivey responded that they were "waiting for my husband, Ernest Ivey, who is in Mexico." Miley, believing that she had imported a narcotic, then took her to the hospital in order that her person might be examined for any narcotic so concealed. It was discovered that she had secreted about her person a quantity of heroin. When she thought it was about to be discovered, she attempted to swallow it, but was prevented from doing so by the Customs Agents who took possession of it. Later it was introduced in evidence.

Miley testified that at the hospital she stated, in his presence and in the presence of Agent Blackwell and Agent Stevens, that she and her husband had gone to Mexico to get a "fix," that each of them had received an injection of a portion of the heroin they purchased, and that what was found on her was the remainder.

Harry M. Reasoner, Houston, Tex., for appellant.

James R. Gough, Asst. U. S. Atty., Woodrow Seals, U. S. Atty., Homero M. Lopez, Thomas L. Morrill, Asst. U. S. Attys., Houston, Tex., for appellee.

Before WHITAKER,* Senior Judge, and RIVES and JONES, Circuit Judges.

WHITAKER, Senior Judge.

Appellant, the defendant below, was convicted of the unlawful importation of a narcotic into the Uuited States, in that he had aided and abetted in its importation, which, under 18 U.S.C. § 2 (1958), made him guilty as a principal.

Ivey and his wife, Ruth Darlene Ivey, accompanied by Margaret Sue Smith and a man named Jimmy Garcia, went to Roma, Texas, or thereabouts, in a white Oldsmobile belonging to Margaret Sue Smith. Either before arrival in Roma or shortly thereafter, the men separated from the women, but, according to a confession alleged to have been made by appellant to Customs Agent Blackwell, the party went to Mexico by separate ways but reassembled at Ciudad Miguel Aleman, Mexico. There he stated in his alleged confession, he and his wife had bought a gram of heroin for $20 at the Texas Bar and each of them had received

* Of the United States Court of Claims, sitting by designation.

Miley testified that this statement was made in the presence of her husband, the appellant, and that he made no comment with respect to it.

After the prosecution had rested, the appellant put his wife on the stand.[1] She admitted having purchased a gram of heroin in Mexico but she stated that her husband was not with her at the time and that he had no way of knowing that she had any portion of it in her possession when she came back to the United States. She said she had not seen him in Mexico at all.

The appellant objected to the admission of Mrs. Ivey's statement on the ground that it was hearsay. On appeal he alleges that the statement was inadmissible, both because the testimony of one spouse is inadmissible against the other over his objection, and because it was the extra-judicial, post-arrest confession of an alleged co-principal.

We hold that her alleged statement was inadmissible on the first ground. We find it unnecessary to consider the second ground.

■ Miley's testimony relating what Mrs. Ivy had told him about the appellant's participation in the importation not only violates the rule against admitting hearsay testimony but also the rule against admitting testimony of one spouse against the other. In Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), the Court reaffirmed the old common law rule, to the extent that a wife's testimony was inadmissible *against* her husband.

In an opinion by Mr. Justice Black, the Court stated:

"While the rule forbidding testimony of one spouse *for* the other was supported by reasons which time and changing legal practices had undermined, we are not prepared to say the same about the rule barring testimony of one spouse *against* the other. The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well. Such a belief has never been unreasonable and is not now. \* \*" [358 U.S. 74, 77, 79 S.Ct. 136, 138.]

While the Court said that its decision did not "foreclose whatever changes in the rule may eventually be dictated by 'reason and experience,' " we are not prepared to say that "reason and experience" dictate the admission of the wife's statement in the case at bar. On the contrary, there are more than the usual reasons for excluding it. Her alleged statement was not made in open court; it was contrary to the statement she later made in open court. It was made to the Customs Agent who had her under detention, and while she was under the influence of a narcotic.

The Hawkins case, supra, involved the admission of a wife's testimony in open court, but we know of no reason why the rule there reaffirmed is not equally applicable to a statement alleged to have been made by her out of court. She might as well be permitted to testify against her husband in open court as to permit the introduction of a statement she had made against him out of court. Peek v. United States, 321 F.2d 934, 943 (9th Cir. 1963); United States v. Winfree, 170 F.Supp. 659 (E.D.Pa.1959). Indeed, as we said above, there are *stronger reasons* in this case for excluding such a statement than for excluding her testimony in court.

■■ The Government's position that it is admissible as an implied admission by appellant because made in his presence and not denied by him, is clearly untenable. Not only does the Fifth Amendment to the Constitution give a person the right to decline to make any statement himself, because it might tend to

[1]. She was not tried with her husband, having pled guilty to one of the Counts in the indictment, a Count on which appellant was not tried.

incriminate him, but it gives him the right to remain silent when another makes statements in his present that tend to incriminate him. If not, the Fifth Amendment's protection would be an empty thing. All that would be required to rob him of that protection, against his being required to give evidence against himself, would be to have someone make a statement in his presence which tended to incriminate him. At the time his wife made her alleged statement, appellant was under arrest and had been warned that anything he said would be used against him. He had a Constitutional right to remain silent. As the court said in McCarthy v. United States, 25 F.2d 298, 299 (6th Cir. 1928):

> " * * * to draw a derogatory inference from mere silence is to compel the respondent to testify; and the customary formula of warning should be changed, and the respondent should be told, 'If you say anything, it will be used against you; if you do not say anything, that will be used against you.' "

This language was quoted with approval in United States v. Lo Biondo, 135 F.2d 130, 132 (2d Cir. 1943). It is plainly sound.

The Government says that the testimony regarding Mrs. Ivey's alleged statement was admissible because the appellant placed her on the stand, but this is also untenable, because she was not placed on the stand until after her alleged statement implicating appellant had been erroneously admitted in evidence. When she was placed on the stand, she did not corroborate the testimony as to her alleged statement but denied that part of it which implicated the appellant.

The Supreme Court in Hawkins v. United States, supra, further held that the admission of a wife's testimony was not harmless error and that the case had to be reversed on account of its admission. In this case Ruth Darlene Ivey's testimony furnishes the only corroboration for the alleged confession of the appellant. Without her testimony his con-

fession would stand alone and, of course, it alone does not support a conviction. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). The admission of her testimony was therefore plain error. Glenn v. United States, 271 F.2d 880, 883 (6th Cir. 1959), and cases there cited.

This holding makes it unnecessary for us to consider the alternative ground urged by the appellant that her testimony was inadmissible as against a co-principal in crime, but see Wong Sun et al. v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Accordingly, the decision of the court below is

Reversed.