Raymond Alfred BEAUDINE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 25019.

United States Court of Appeals Fifth Circuit.

Aug. 14, 1969.

Raymond E. LaPorte, Ragano & LaPorte, Tampa, Fla., for appellant.

Robert B. McGowan, Asst. U. S. Atty., Edward F. Boardman, U. S. Atty., Tampa, Fla., for appellee.

Before GOLDBERG, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This case is before us for the second time. Appellant was originally indicted in 1963, when a five-count indictment charged him, as an officer of Clearwater Federal Savings and Loan Association, and Joseph Merrill Mulvey with violating Title 18, U.S.C., § 1006 and Title 18, U.S.C., § 371 in that appellant took kickbacks from Mulvey, a contractor performing work for borrowers under Title I, Home Improvement Loan, and conspired to commit offenses against the United States. Counts One and Three of the indictment charged that appellant, with intent to injure and defraud Clearwater Federal Savings and Loan Association and the Federal Savings and Loan Insurance Corporation, shared in and received benefits from Mulvey through transactions of loans of the association. Counts Two and Four charged Mulvey with aiding and abetting appellant to commit the offenses charged against him in Counts One and Three. The fifth count of the indictment charged appellant and Mulvey with conspiracy. At the first trial of this case in 1963 the counts against Mulvey were dismissed on the basis of double jeopardy. A jury then returned a verdict of guilty against Beaudine as to the three remaining counts of the indictment, and he was sentenced to five years' imprisonment on each of these counts, the sentences to run concurrently. On appeal from that conviction this Court reversed on the ground that restrictive cross-examination of Mulvey, along with other restrictive evidentiary rulings, could not be regarded as harmless error. Beaudine v. United States, 5 Cir. 1966, 368 F.2d 417. On remand and retrial, appellant was acquitted by a jury as to Count One and Count Five, but was found guilty as to Count Three, and was sentenced to five years' imprisonment. The present appeal followed.

As this Court said on the previous appeal in this case, Title 18, U.S.C., § 1006, "makes it an offense for an officer, agent, or employee of a savings and loan association to participate or share in or receive directly or indirectly any money,

profit, property, or benefits through any transaction, loan, commission, contract, or any other act of such association if done 'with intent to defraud the United States or any agency thereof.'" Beaudine v. United States, 5 Cir. 1966, 368 F.2d 417, 419. On this appeal Beaudine contends that the mental element of the crime was not proven by sufficient evidence and that various rulings of the trial court concerning testimony and other evidence denied him a fair trial. We find these contentions to be without substance and affirm.

The factual background culminating in this indictment may, as was said in the earlier case, 368 F.2d at 419, "be quickly told". In May of 1959 appellant was employed by the Clearwater Federal Savings and Loan Association to manage its home improvements loan department with the title Home Improvement Loan Officer. He was to develop home improvement loans. He established the department, and received and considered applications and closed loans with full authority to approve or disapprove home improvement loans. His employer did not set forth any rules or regulations guiding him in his duties. The FHA regulations on home improvement loans were broad, and under them the association and its loan officers could rely upon the statements contained in a customer's application for a home improvement loan. Appellant instituted a policy of obtaining a credit report on each applicant and required the applicant to agree not to encumber the property.

The heart of the government's case was that Mulvey and Beaudine entered into an agreement as the result of which Beaudine, as an officer of the federal savings and loan association, participated in receiving money from Mulvey through loans at the Clearwater Federal Savings and Loan Association. Mulvey testified that appellant had asked him if he would like to have a partner, with appellant receiving half of the profit Mulvey made on home improvement loans. Mulvey testified that between July and September of 1960 he paid Beaudine between sixteen and eighteen thousand dollars as his portion of profits on jobs that his construction company had financed through appellant at Clearwater Federal Savings and Loan Association.

Appellant's first argument is that there was insufficient evidence of the "intent to defraud" required by the statute. Appellant says, as he did on the prior appeal: "The testimony (accepting the truthfulness for the purposes of argument) of Mulvey, showed an agreement whereby Mulvey and the appellant would divide the profits that Mulvey would make on home improvement work that Mulvey's company would undertake on loans secured through Clearwater Federal Savings and Loan Association". Appellant argues, however, that the agreement not only did not show any intent to injure or defraud Clearwater Federal Savings and Loan Association, but on the contrary showed that appellant would give Mulvey a few jobs if Mulvey would straighten out the credit or get them in such a position that the loan would be all right.

This Court in Beaudine v. United States, 368 F.2d at 420, carefully examined and analyzed the statute under which Beaudine was convicted. It was pointed out that the statute embraces a typical conflict of interests prohibition, and that when there is a purpose to deceive by one who ostensibly acts solely for his principal while he knows he has a pecuniary interest that will or may subvert his undivided loyalty, the fraudulent purpose is completed whether the objective is to obtain an advantage or to cause the principal to suffer a loss. The evidence amply supports the jury verdict on Count Three. Indeed, appellant concedes that the record is in substantially the same position as on the first appeal and that the point as to his intent is controlled by this Court's decision in the earlier case. That decision was reached after a careful review of the statutory requirements. It is the law of this case, and no "cogent reason"—either a change

in controlling law or any other—is suggested for departure from it.[1]

The chief contentions of appellant relate to the conduct of the trial, and he raises four points in regard to which he claims the trial court erred so as to deny him a fair trial. It is urged that the trial court erred (1) in the denial of an opportunity to testify as to his intent when he accepted money from Mulvey, (2) in the allowance into evidence of transactions outside the scope of the indictment, (3) in the government's failure to produce upon request records that would have aided appellant in the cross-examination of Mulvey, and (4) in the manner in which Jencks Act statements were furnished to him. These contentions will be considered in order.

■ Beaudine was asked the following question by his counsel:

"Have you ever during your association with the Clearwater Federal Savings & Loan Association done any act with the intent to injure and defraud that Association?"

The government objected to the form of the question, and contended that its terminology was in words of legal art. The objection was sustained by the trial court, and appellant contends that this action amounted to a deprivation of his right to testify as to his intent in accepting money from Mulvey. This contention is without merit. The question was extremely broad in form, and appellant did not seek to rephrase it. The mental element of this crime was specifically described on the former appeal, where this Court pointed out that if there was a purpose to deceive it did not matter whether the objective was to obtain an advantage or to cause the principal to suffer a loss—either objective completed the fraudulent purpose. 368 F.2d at 420. Appellant had full opportunity to testify as to his mental state. In response to

questions put by his counsel he testified that he had never approved any loan applications for Clearwater Federal Savings & Loan Association that he felt were harmful to the association or improper in any fashion. He testified that he had never been in partnership with Mulvey, directly or indirectly, that he had never received any kickbacks from Mulvey directly or indirectly, and that he had never offered to make an illegal or bad loan to anyone. The jury was fully and properly instructed as to the mental element of this crime, and appellant was not denied his right to testify as to his intent.

Appellant next urges that the trial court erred in permitting witnesses to testify as to transactions not specified in the indictment itself. This contention is lacking in substance. On the previous appeal Judge Brown pointed out that "Broad range was rightfully allowed to the Government in establishing the general scheme, pattern, procedure, motivation and practice out of which to establish the requisite intent to defraud and participation in profits". 368 F.2d at 425. The trial judge had in mind and specifically referred to the language in the prior opinion dealing with the proof of intent, and ruled in accordance with that holding in admitting the complained of testimony. Further, it should be kept in mind that Count Five, the conspiracy count was before the jury, although the jury later found Beaudine not guilty under that count. The other transactions were properly for the jury's consideration as circumstances probative of conspiracy. No error is made to appear in this regard.

It is further contended by Beaudine that he was denied a fair trial because the government was not ordered to produce a "rap sheet" or an F.B.I record for appellant's use in cross-examining the witness Mulvey. Of course Mulvey was

1. Lumbermen's Mutual Casualty Co. v. Wright, 5 Cir. 1963, 322 F.2d 759 at 763; cert. denied 354 U.S. 939, 77 S.Ct. 1397, 1 L.Ed.2d 1536; Lincoln National Life Insurance Co. v. Roosth, 5 Cir. 1962, 306 F.2d 110; Green v. American Tobacco Co., 5 Cir. 1968, 391 F.2d 97 (dissenting opinion at pages 106, 113, adopted as Court's opinion en banc, 5 Cir. 1969, 409 F.2d 1166).

the crucial witness against Beaudine, and it was therefore highly important that the appellant have full opportunity to discredit him if possible. This was the crux of our reversal upon the former appeal.

■ An examination of the entire testimony and the transactions concerning Mulvey's prior record make it clear, however, that appellant was not denied a fair trial in this respect. On direct examination Mulvey testified that he had been convicted of a felony four times—in 1934, 1936, 1948 and 1960. These offenses included breaking and entering, theft of an automoible, and defrauding the government in connection with FHA loans. On cross-examination Mulvey was asked whether it was not a fact that he had been convicted not of four, but of seven different felonies. He denied the suggestion. At appellant's request there was then a sidebar conference at which appellant's attorney stated that he believed Mulvey had been convicted of seven different felonies and asked the court to order government counsel to produce a rap sheet or F.B.I. record to impeach the witness. This motion was denied, the trial court in effect saying that it was up to appellant to try to prove that the witness had been convicted of three other felonies. Subsequently, a subpoena duces tecum was served on a special agent of the F.B.I. who had been with government attorneys throughout the trial at counsel table. After a hearing the court then ordered the government to produce the rap sheet for the court's inspection in camera and then ordered the government to turn it over to counsel for appellant. Mulvey was subsequently cross-examined by counsel for the appellant with the rap sheet in counsel's possession. On this cross-examination appellant's counsel elicited from Mulvey testimony that indicated that he had been convicted of serious crimes more frequently than he had admitted when he was on direct examination. Some of this testimony could be construed, however, to show that Mulvey on direct examination was not necessarily lying deliberately, but may

have been confused as to a distinction between a misdemeanor and a felony, concurrent sentences, and crimes committed while he was incarcerated. The testimony in its entirety shows clearly that appellant had and took advantage of a full opportunity to present to the jury the character, background and veracity of the witness Mulvey. Although appellant received some of the information that enabled him to cross-examine more vigorously at a later time than he would have preferred, his cross-examination was complete before the government rested its case. This point obviously is devoid of merit.

Appellant's final contention presents the most serious problem for our consideration. He urges that he was denied a fair trial because statements he was entitled to receive from the government under the Jencks Act, Title 18 U.S.C., § 3500, were furnished to his counsel in the presence of the jury, and this in spite of a request that the jury be absent when they were supplied to him. The procedure followed by the trial court was to have the government furnish appellant's counsel with a witness' prior statements when the witness came to the stand, and to call a recess for the purpose of allowing appellant's counsel to examine the statement before beginning his cross-examination of that witness. The trial court carefully informed the jury that this procedure would be followed. Appellant's contention is that he was thereby placed in an untenable position in the eyes of the jury, in that a subsequent failure on his part to cross-examine or to offer evidence revealed by the statement would in the mind of the jury elevate the prior statements to the status of corroboration of the witness' testimony by a previous consistent statement.

There is substance in this contention, and support for it in some decisions. In Gregory v. United States, 1966, 125 U.S. App.D.C. 140, 369 F.2d 185, the Court of Appeals for the District of Columbia found it was improper for the trial court to require defense counsel to request, receive, and read Jencks Act statements in

the presence of the jury. The Court there relied upon its earlier decision in Johnson v. United States, 1965, 121 U.S. App.D.C. 19, 347 F.2d 803, where the Court referred to the well-known rule of evidence that prior consistent statements may not be used to support one's own unimpeached witness. It was pointed out in the *Johnson* case that the Jencks Act did not abrogate this time-honored common law evidence rule. It was said that in order to avoid undue prejudice which might arise if the jury knew that Jencks Act statements were available to the accused, motions for their production should be made out of the hearing of the jury and the handing over of the statements should take place with the jury absent or at least unaware. In that case the statements were turned over to defense counsel in the presence of the jury and then a recess was called to permit counsel to study the statements. That seems to have been the practice followed in the trial below. In *Gregory* the trial judge had shown familiarity with the *Johnson* case but declined to follow the procedure suggested by it because he thought the statements there were dictum. On appeal, the Court in *Gregory* said that its purpose in *Johnson* had been to preclude the jury "from drawing an inference that the statement or statements received are consistent with the witness' testimony unless defense counsel uses the statements to cross-examine him". The Court there said it could not perceive any reason other than to prejudice the exercise of Jencks Act rights to require defense counsel to request and receive such statements in the presence of the jury.

Permitting the jury to be present when Jencks Act material was being marked for identification was indirectly criticized in United States v. Kahn, 2 Cir. 1966, 366 F.2d 259, 265, cert. den. 385 U.S. 948, 87 S.Ct. 321, 17 L.Ed.2d 226, rehearing den. 385 U.S. 984, 87 S.Ct. 502, 17 L.Ed.2d 445, where the Court pointed out that it would have perhaps been better if the identification had been done in the absence of the jury. The

Court said that the procedure followed there was not by itself sufficient grounds for reversal.

The suggestion in the *Kahn* case was supplemented by the Court of Appeals for the Second Circuit in United States v. Gardin, 2 Cir. 1967, 382 F.2d 601, 605, where the Court said:

"The procedure to be followed should be left to the discretion of the trial judge. While we therefore lay down no hard and fast rule, we do suggest the following which generally may meet the positions of both parties. After the completion of the witness' direct testimony and before cross-examination has been concluded, the defendant will state that he requests leave to make a motion in the absence of the jury; the trial judge will then excuse the jury, and, in its absence, the defendant will move for disclosure of Jencks Act material."

Judge Moore concurred specially in the *Gardin* case because he thought the suggestion made by the majority of the Court there was for all practical purposes a direction, and he felt that a greater amount of discretion should be left to the trial judge in light of the circumstances that arose at a trial.

The rule of *Gregory* established for the District of Columbia and the rule of *Gardin* for the Second Circuit were recently appraised by the Seventh Circuit in United States v. Nielsen, 7 Cir. 1968, 392 F.2d 849, 853, 854. The Seventh Circuit in the *Nielsen* case felt itself incapable of envisioning every situation that might arise concerning the production of Jencks Act statements, and therefore declined to establish an inflexible rule leaving it instead to the sound discretion of the trial judge. In that case, for example, the Court affirmed a conviction because it found no prejudice resulting in view of defendant's counsel's vigorous cross-examination after he had received the Jencks Act statements. Defense counsel had requested to be heard out of the presence of the jury and had objected to the manner of tendering the statements. In United States v. Stahl,

7 Cir. 1968, 393 F.2d 101, 105, the Court quoted with apparent approval from Gregory v. United States, and referred to the procedure as unfair. The Court also said that the trial court's comment that the Jencks Act statement was being furnished to see if the witness was telling the same story on the stand as she told the F.B.I. when they took her statement, may serve to compound the error. In that case, however, no objection was made, the statements were used in cross-examination, and the incident was found to afford no basis for reversal.

Pallotta v. United States, 1 Cir. 1968, 404 F.2d 1035, is a recent and well-reasoned opinion which considers and evaluates the positions adopted by different Circuits and shows that prejudice may result both to the defense and to the prosecution in the implementation of the right of examination of pre-trial statements of government witnesses. We quote with approval and adopt for this Circuit the holding of that case. In our judgment it gives appropriate consideration to the rights of both parties:

"We are unwilling to promulgate a hard and fast rule. Undoubtedly in some cases Jencks Act statements should be produced and studied in the physical absence of the jury. This would be particularly true where a witness' testimony is lengthy and complicated, or is especially crucial in the context of a given trial. On the other hand, there will be many cases where it will be sufficient to produce the statements out of the hearing of the jury and to call a recess without excusing the jury from the courtroom. Thus, when defense counsel desires production of Jencks Act statements, he should be allowed to make such a request before the bench out of the hearing of the jury. If defense counsel so requests, the court can determine at that time whether it is necessary to remove the jury from the courtroom. If the statements are used in cross-examination, the jury should be informed of the source of the questions and the statutory authority governing the use of such statements. These procedures should be followed in this circuit in trials commencing after the date of publication of the opinion in this case."

In the instant case it is noteworthy that the appellant's counsel requested in the presence of the jury that the Jencks Act statement of one witness be furnished, and asked that they be given in advance because "it would save a lot of time". As indicated above the rule we adopt leaves room for discretion to be exercised by the trial judge in the circumstances as they actually develop at the trial. This discretion is not here shown to have been abused and we are not persuaded that Beaudine suffered any prejudice from the procedure followed. His conviction will not be reversed on this ground.

The judgment of the district court is Affirmed.