UNITED STATES of America, Plaintiff-Appellee,

v.

Franklin Eugene WILLIAMS and James Edison Williams, Defendants-Appellants.

No. 29937.

United States Court of Appeals, Fifth Circuit.

July 30, 1971.

10. See Historical Note, following 8 U.S. C.A. § 1101.

John A. DeVault, III, Jacksonville, Fla. (Court Appointed), for Franklin E. Williams.

Edward J. Witten, Jacksonville, Fla. (Court Appointed), for James E. Williams.

John L. Briggs, U. S. Atty., Joseph W. Hatchett, Harvey E. Schlesinger, Asst. U. S. Attys., Jacksonville, Fla., Richard J. Mandell, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The Williams brothers, Franklin and James, here appeal from convictions in the district court for alleged dealings in counterfeit United States currency.[1] We find support in the record for such claims of irregularities in the proceedings below as to require that the case be retried. We accordingly reverse and remand.

A number of asserted errors are insisted upon by the appellants between them. We dispose of the more serious of these contentions more or less in the order in which they are raised by the briefs. We limit our discussion of the evidence because of the likelihood of retrial.

## METHOD OF JURY SELECTION

Appellant James Williams contends that the method the trial judge employed in the selection of the jury violated his Sixth Amendment right to a fair and impartial trial. The trial judge, a senior district judge from another circuit sitting by designation, employed a method of jury selection beyond the experience of the Florida lawyers in the case. 32 jurors were initially brought inside the rail and seated, both within and without the jury box. The five defendants were limited to a total of ten peremptory challenges, which could be utilized by the defendants jointly, or two to each defendant.[2] See Rule 24(b), F. R.Crim.P. The government had the six peremptory challenges allowed by Rule 24(b). The parties were at this point required to exercise all of their sixteen peremptory challenges to reduce the panel of 32 jurors to 16. Of the remaining four extra jurors, each side was allowed to strike one, in turn so that a jury of twelve and two alternates remained and was empaneled.

James Williams, while asserting that this method of empaneling the jury was prejudicial, fails to indicate the basis for such a claim. None appears from an inspection of the voluminous record. There is no suggestion that any biased, prejudiced or otherwise objectionable juror served in the trial. It must be assumed then that all such jurors were eliminated either by peremptory challenge or by challenge for cause.

James Williams here actually presents the identical unsuccessful contention made by defense counsel in Amsler v. United States, 9 Cir. 1967, 381 F.2d 37, 44, that twelve jurors should have been called and challenges exercised against the panel with replacements then called to fill the place on the panel of the excused juror. There is no authority known to us for so limiting the discretion of trial judges in the federal system of courts. Indeed the whole procedure outlined by Rule 24, F.R.Crim.

1. The judgments of conviction were entered on the verdicts of a jury. Appellant Franklin Williams was convicted on a charge that he "did possess, with intent to defraud, counterfeit obligations of the United States" in violation of Title 18, U.S.C., Section 472. Appellant James Williams was convicted of conspiracy to "possess, utter, publish, receive, and exchange counterfeit Twenty Dollars ($20.-00) Federal Reserves Notes" in violation of Title 18, U.S.C., Section 371, and of three counts of possessing, passing, and uttering counterfeit bills in violation of Title 18, U.S.C., Section 472.

2. Three other persons not involved on this appeal were tried jointly with the Williams brothers. These were Leon Kicklighter, Porter Hilton Spikes and William Daniel Weisman. Three defendants also named in the indictment, Preston Eugene Dowdy, Carl Lee Livingston and Sarah Hart Williams, the wife of Franklin Williams, were not on trial, having been granted severances.

P., emphasizes the wide discretion committed to the trial judge in the methods employed to select juries. As did our sister circuit in *Amsler,* we conclude that there is no substance in this argument.

Moreover, the limitation of the five defendants to ten peremptory challenges and permitting them to be exercised separately or jointly is in direct compliance with F.R.Crim.P., Rule 24(b). Under that rule the court *may* (not must) allow additional peremptory challenges where there are multiple defendants. See also, Gradsky v. United States, 5 Cir. 1965, 342 F.2d 147, 152, United States v. Crutcher, 2 Cir. 1968, 405 F.2d 239, 245.

■ The method of jury selection employed, while strange to Florida counsel in the case, is not demonstrated to have been erroneous.

## ADMISSION OF STATEMENT OF MRS. FRANKLIN WILLIAMS

Over defense counsel's objection, on cross-examination of Franklin Williams, government counsel asked whether his wife, Sarah Hart Williams, made a statement at the time Franklin Williams was arrested by a government agent:

"Q Didn't she say, 'I told you you were going to get in trouble messing with J. E. Williams and those counterfeits?'

"A No, sir, she did not."

On rebuttal Police Officer Powell testified that Mrs. Williams at the time of such arrest in the presence of the defendant Franklin Williams and Agent Williamson, in the course of having a violent argument, stated:

"I told you that goddamn JE was going to get you in trouble with them goddamn counterfeits."

Appellant Franklin Williams claims here that the admission of Officer Powell's testimony violated the common law rule that a wife's testimony is inadmissible against her husband. Counsel claims that this was the singularly most damaging piece of evidence admitted against appellant Franklin Williams be-cause it was the only evidence which linked him to the activities of his brother James, and that it also presented evidence that the notes found in his possession were known to be counterfeit. The government asserts that the testimony is proper for the following reasons: (1) It impeaches defendant's denial on cross-examination; (2) it is an incriminating statement in the presence of the defendant; and (3) it is an admission against interest by a co-conspirator. Sarah Hart Williams was not then on trial, her case having been severed for trial.

In Hawkins v. United States, 1958, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125, the Supreme Court reaffirmed the common law rule that grants to a husband in a criminal proceeding the privilege to prevent his spouse from testifying against him. This Court, in Ivey v. United States, 5 Cir. 1965, 344 F.2d 770, held that the admission of the testimony of a government agent to the contents of a statement made prior to trial by a wife against her husband was reversible error. We said in *Ivey*:

"Miley's testimony relating what Mrs. Ivy [sic] had told him about the appellant's participation in the importation not only violates the rule against admitting hearsay testimony but also the rule against admitting testimony of one spouse against the other. In Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), the Court reaffirmed the old common law rule, to the extent that a wife's testimony was inadmissible against her husband." 344 F.2d at 772.

This Court noted no distinction between a statement allegedly made out of court, as in the instant case, and one made on the witness stand:

"The Hawkins case, supra, involved the admission of a wife's testimony in open court, but we know of no reason why the rule there reaffirmed is not equally applicable to a statement alleged to have been made by her out of court. She might as well be permitted to testify against her husband

in open court as to permit the introduction of a statement she made against him out of court." 344 F.2d at 772.

We view this case as indistinguishable from *Ivey* unless it can be demonstrated that since Sarah Williams was a *charged* co-conspirator in the indictment the evidence was an admission against the interest of a co-conspirator admissible against the other conspirators.[3] We need not consider that question, however, since even if the law is that the statements of a wife may be introduced in derogation of the husband-wife privilege where the wife is also a co-conspirator, (a question which we expressly refrain from deciding) it is without dispute that here the statement of the wife was made after the arrest (and hence the termination of the conspiracy) and could therefore be admissible only against the defendant who made the statement. See Wharton, Criminal Evidence (12th Ed.), Sections 429, 433; United States v. Harrell, 5 Cir. 1970, 436 F.2d 606.

■■■ We hold that the admission of the statement of Sarah Hart Williams was prejudicial error as to Franklin Williams.

## THE "ALLEN" CHARGE

The jury began its deliberations in this case at 10:35 A.M., on Tuesday, March 31, 1970. The jury deliberated until 4:30 P.M., when they sent word to the court that they were thirsty and requested that some Coca-Colas be sent to them. At that point, the trial judge, *sua sponte*, without any intimation from the jury that they were deadlocked, or any request for further instruction, and without informing counsel of his intentions called the jury back into the courtroom and gave them the following variation on the so-called "Allen" Charge[4] or "dynamite" charge:

THE COURT:

Now, Mr. Carter, I have had the statement from the Marshal that some of you are getting a little thirsty and would like to have some Cokes and he will take care of those needs right after I have said a few words to you.

I hope that you will be able to come to an agreement on at least some count to each defendant and I want to say this to you: This is an important case and in all probability it cannot be tried better or more exhaustively that it has been on either side. It is desirable that you agree upon a verdict or verdicts.

The Court does not want any juror to surrender his or her conscientious convictions. Each juror should perform his or her duty conscientiously and honestly according to the law and the evidence. All the verdicts to which the jurors agree must be his or her own verdict. It is the result of his or her own convictions and not a mere acquiescence in the conclusion of other jurors.

Yet in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor and with the proper regard and deference to the opinions of each other. You should consider that the case at

---

3. See footnote 1, supra. Sarah Hart Williams was charged as a co-conspirator under Count One but was not on trial. She was not named defendant in Counts Two through Eleven, which were substantive charges charging one or more defendant with possessing or uttering counterfeit currency, bogus $20 bills bearing the same check letter, Front and Back Plate numbers and serial number. Sarah was again named as a defendant, with the other seven defendants in Count Twelve, which charged receipt, delivery and exchange, Title 18, U.S.C., Section 473, of a large quantity, in excess of thirty, of the counterfeit twenties. It is at once apparent then that since Sarah was not on trial in the proceedings appealed from, the government had no occasion whatever to introduce proof of the damaging remark as part of its case against *her*.

4. So-called because of its approval in Allen v. United States, 1896, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528.

some time must be decided and that you 12 are selected in the same manner and from the same source from which each future jury must be, and there is no reason on the part of anyone to suppose that the case will ever be submitted to a jury more intelligent and more impartial or more competent to decide it or that more or clearer evidence will be produced on one side or the other.

Now, in conferring together, you ought to pay proper respect to each others' arguments. On the one hand, if much the larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his or her mind is a reasonable one which makes no impression on the minds of so many men or women equally intelligent with himself or herself to have heard the same evidence with the same attention and with equal desire to arrive at the truth and under the sanctity of the same oath.

On the other hand, if a majority are for acquittal the minority ought to seriously ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated and to distrust the weight or sufficiency of that evidence which fails to carry conviction in the minds of their fellow jurors.

On the other hand, the majority, if there is one—and I am not making any inquiry in that regard—should consider carefully the opinions of the minority with the same force and effect that I have asked the minority to consider the opinions and convictions of the majority.

Now, I am going to ask you to again retire and carefully consider all of the evidence in light of the Court's instructions and see if you cannot agree upon a verdict. You understand, of course, that if you agree on some and can't agree on others, if you agree on a verdict—and I am not suggesting either way—guilty or not guilty as to each of the defendants and can't agree on others, that is a perfectly valid verdict which you can return to this Court.

So now, we will ask the Marshal to get that Coke quickly so that you can have an afternoon break. Retire and consider the case again. (T. pages 1039–1042).

Counsel for both Williams brothers objected promptly to the giving of the charge. The jury retired at 4:30 P.M. and its verdict, not surprisingly, followed shortly thereafter, at 5:20 P.M., 40 minutes later. The *Allen* charge, discredited in some circles,[5] has been approved so many times by this Circuit as hardly to require the citation of authorities, viz: Hale v. United States, 5 Cir. 1970, 435 F.2d 737; United States v. Hill, 5 Cir. 1969, 417 F.2d 279; Posey v. United States, 5 Cir. 1969, 416 F.2d 545; Thaggard v. United States, 5 Cir. 1965, 354 F.2d 735; Andrews v. United States, 5 Cir. 1962, 309 F.2d 127; Huffman v. United States, 5 Cir. 1962, 297 F.2d 754; although often with insistence that the exact language of "Allen", or a close paraphrase thereof is the ultimate permissible limit, Green v. United States, 5 Cir. 1962, 309 F.2d 852, and occasionally with dissents, *Thaggard*, supra, *Andrews*, supra, *Huffman*, supra.

The charge here may be criticized on similar grounds, as it has been effectively in the appellants' brief. We do not analyze these contentions or the government's counter-arguments that the charge was really a model of its kind. The charge as to its substance was borderline and probably not prejudicial

---

5. *See* United States v. Brown, 7 Cir. 1969, 411 F.2d 930; United States v. Fioravanti, 3 Cir. 1969, 412 F.2d 407, cert. denied Panaccione v. United States, 1970, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed. 2d 88. The use of the charge is disapproved by the recommendation of the American Bar Association Advisory Committee (A.B.A. Project on Minimal Standards of Criminal Justice, Trial by Jury, Sec. 5.4 at 145–156, approved draft, 1968).

under the jurisprudence as it now stands. But the content of it is not as disturbing to us as its timing. Giving the charge, *when it was given*, in the posture of the trial at that time came perilously close to an abuse of the trial court's discretion. This was a complicated trial, lasting six days and resulting in a transcript of 1086 pages. Five defendants were tried on twelve counts, one a conspiracy count, which itself charged 19 overt acts. Forty-six witnesses were called to the stand. The jury had deliberated less than six hours, 10:35 A.M. to 4:30 P.M. the same day, with an indefinite time out for lunch, when they indicated that they wanted soft drinks sent in. Nothing more, no hint of deadlock, no request for additional instructions. It is unlikely that up to that point enough time had elapsed for even scant consideration and discussion of the evidence as it applied to each defendant on trial under each of the twelve counts on trial.

■ As noted, we have often approved the giving of a proper *Allen* charge, and have stated that "Whether in any case the *Allen* charge should be given rests initially in the sound discretion of the trial judge," Powell v. United States, 5 Cir. 161, 297 F.2d 318, 322, but as we also said in *Powell* "But the correctness of the charge must be determined by the consideration of the facts of each case and the exact words used by the trial court" in the following sentence. The use of the charge in the circumstances present in the trial below, with no indication by the jury that an impasse had been reached, and with no basis in reason for the court to conclude that a deadlock existed or that sufficient time had elapsed for full consideration of numerous issues in a complex case verged upon coercion of a verdict. As in United States v. Rogers, 4 Cir. 1961, 289 F.2d 433, 436:

> "The time interval" (40 minutes in our case) "was quite long enough for acceptance of a theory of majority rule, but was hardly long enough to

have permitted a painstaking re-examination of the views which the minority had held steadfastly until the charge was given."

An inference arises that the jury's will and consequently the appellant's right to its unfettered exercise of its right to decide may have been over-ridden and overcome by the action of the trial judge. Neither *Powell*, supra, nor *Andrews*, supra, are contrary to such a holding, for a reading of those cases reveals that in each of them the juries had reached actual stalemates. In *Hale*, supra, as the government points out, the district court gave the *Allen* charge after three hours of jury deliberation with no indication from the jury that they were unable to reach agreement. We iterate that in this critical field, each case must stand or fall on its own facts, and that a case by case approach is the only proper one. We think that a potent and substantive argument is put forward here that the surrounding facts require a reversal on this point, but inasmuch as the case is reversed on other grounds as to both defendants, we do not decide this close and bothersome question.

## DISCLOSURE OF JENCKS ACT MATERIAL

Following the direct examination of the first two witnesses against Frank Williams defense counsel requested production of any Jencks Act material out of the presence of the jury. Defense counsel called to the attention of the trial court this Court's opinion in Beaudine v. United States, 5 Cir. 1959, 414 F.2d 397, and the procedures outlined in that case for the turning over of Jencks Act material. The trial judge denied the request for the physical removal of the jury from the courtroom. The court viewed the government material *in camera*, and then, in the presence and hearing of the jury, ordered the deputy marshal to hold the material produced by the government so that defense counsel could view only the portions which the court deemed relevant. The material

revealed was not used in the cross-examination of the witnesses.

■ Defense counsel here rightfully urges that this exercise undertaken in the presence and hearing of the jury laid the defense open to an inference by the jury that all that was in the reports was consistent with the testimony of the witnesses. This bolstering of the testimony of government witnesses was impermissible under our decisions. In both *Beaudine,* supra and United States v. Lepiscope, 5 Cir. 1970, 429 F.2d 258, we made it very clear that while it was a matter of trial court discretion whether Jencks Act material should be turned over to the defense outside the *presence* of the jury, at least the defense did have the right to have their request, receipt, and examination of the material out of the *hearing* of the jury. In this case the jury was not only not excused, but were permitted to hear the colloquy between counsel and the court relating to the request, disclosure, and procedure for examination of the material. This was error.

## RULE 30 COMPLIANCE

Defense counsel makes two points with respect to the trial judge's failure to comply with Rule 30, F.R.Crim.P.: (1) his refusal to permit review of the intended charges prior to closing arguments or to inform counsel specifically of its proposed action on the requested charges, as Rule 30 requires; and (2) his failure to hear and consider objections to the supplemental (Allen) charge as Rule 20 directs "before the jury retires to consider its verdict".

As to the first of these contentions, the record shows that the judge merely advised counsel, prior to argument, "I have looked over all your requests and I find nothing in there that I have to directly state flatly that I will not charge. But I propose to charge in my own language, gentlemen." Counsel for the Williamses urges that this is strikingly similar to the "cryptic remarks" held to

be inadequate in Wright v. United States, 9 Cir. 1964, 339 F.2d 578, 579:

"I am going to give the general instructions. And you go ahead and argue the case any way you want to argue it. And I will instruct the jury as to the law involved in this case."

While we do not stamp "approved" on the method pursued here, we think the information conveyed to counsel was so nearly adequate as not to require reversal, especially since we reverse on other grounds. Prejudice to rights of either defendant is not shown. We note also that the judge involved was a visiting judge and that for this reason the circumstances are the more unlikely to recur.

■ The same is true as to a related incident. After having been told by the judge that he would "charge along the lines you have requested" Franklin Williams' trial counsel, at the close of the court's instructions objected to the failure to give or to paraphrase certain requested instructions. The judge gave one of the omitted charges, then said, in the jury's presence: "I think that's bad law". In addition to prejudicing counsel in the eyes of the jury, this remark effectively deprived the defendant Franklin Williams of the effect of the instructions. Williams would have come off better before the jury if the judge had omitted the charge entirely, instead of giving it and immediately labelling it "bad law". Whether it was "bad law" was off the mark. The rule entitles counsel to argue his facts with knowledge of the legal instructions the jury will be told to apply. Williams' counsel here was deprived of that right. We think this occurrence is unlikely to be repeated in this case on another trial and do not find it necessary to decide whether it was so prejudicial as to require reversal.

As to the second claim regarding the trial judge's refusal to follow the requirements of Rule 30, the dereliction appears more serious and we definitely

disapprove the conduct of the judge. Again, since we reverse on other grounds we do not decide whether this ground standing alone would require reversal.

But mainly to sound a warning to district judges of this Circuit, we consider it worthwhile to recount briefly what occurred.

After giving the *Allen* or "dynamite" charge, the judge directed the jury to retire and immediately left the bench, giving counsel no opportunity to state objections, the trial deputy clerk stating that the judge had instructed him to allow counsel to put objections in the record. The judge did not hear the objections himself and had no opportunity to consider correcting the charge before the jury was permitted to resume its declaration.

■■ We consider this a departure from the manner in which criminal cases should be tried. The rights of the defendants on trial and the courtesy due to their counsel require that they receive a courteous and patient hearing from the trial judge. Although as indicated, supra, a serious question is present as to whether the *Allen* charge should have been given, in view of the posture of the trial at the time it was given, we have not found serious fault with the content of the charge itself. This being so we do not feel called upon to determine whether the way in which objections to the charge were handled was erroneous.

## REMARKS OF THE TRIAL JUDGE

In the midst of his general instructions on the law, the trial judge tangentially embarked upon the following irrelevant and completely extraneous dissertation:

"Now, members of the jury, I don't think any of us can doubt under the evidence that has been produced here that between February and May, perhaps June, of 1968 the Secret Service was pretty busy in the Jacksonville Area trying to protect the currency of the United States. That crime against the currency of the United States is a pretty serious crime. Right after the founding of the country in 1789, the Congress thought it most important to protect the currency of the United States. In 1792, Congress ordered the creation of a commission to yearly test the quality and fineness of coins.

With one exception of one year during the Civil War—the mint was then at Philadelphia—that commission has met every year, including the year 1970, on the second Wednesday of February. The Chief Judge of the Eastern District of Pennsylvania is the chairman of that commission and I had the honor to preside at eight sessions of that commission. I show you that this is a long period. It's the oldest commission—governmental commission—in the United States. The Government must for the protection of the public carefully guard its own currency.

That duty for the past half century, at least—the Secret Service is now about 104 years old—has been entrusted to the Secret Service." (T. 1018–19)

■■ A trial judge is not required to sit mute at a trial over which he is presiding. He is more than a referee, much more. But determination of the credibility of witnesses is the jury's proper function, not the court's. The jury's fact-finding duties may not be trespassed upon by a judge's comments, directly or impliedly, which point to one witness or set of witnesses as the more likely to be telling the truth. However innocently they were made, we find the quoted comments objectionable on this ground. They had the effect of bringing vividly and favorably to the minds of the jurors the testimony of the Secret Service witnesses and the important work they perform in protecting the integrity of the currency. We view these remarks as being out of place in jury instructions, and as exceeding our concept of appropriate and fair comment from the bench.

While the briefs of counsel for the appellants cite numerous instances of claimed undue interference with the course of the trial by the presiding judge, numerous remarks claimed to be hostile and hence prejudicial to the defendants and their counsel, we find it unnecessary to discuss these in detail. They are borderline and it is not at all clear that they were intended to have or had the effect counsel argue they had. In any event, there is no likelihood of their recurrence. But the instance cited, the puffing Chamber of Commerce discourse on the Secret Service and its duties was we think egregious and reversible error.

## CONCLUSION

In summary, we find (1) as to Franklin Williams, prejudicial error occurred in the admission of testimony with respect to the post-arrest statement of Sarah Hart Williams, (2) as to both defendants (a) in the handling of Jencks Act material, and (b) in the homily delivered by the trial judge praising the prosecuting government agency, the U. S. Secret Service. Additionally, we have considerable doubt as to the propriety of the trial judge giving the "Allen" charge. One of these errors might be termed not prejudicial, and the convictions affirmed. In their totality, the prejudicial effect mounts, and we conclude that the ends of justice require reversal for retrial. We disapprove, but dispense with deciding, whether the effect was prejudicial in the noncompliance with Rule 30, F.R.Crim.P. as to the handling of charges and the opportunity afforded counsel to object thereto. Additionally, there are several other claimed grounds of error raised on brief. We conclude that we would serve no useful purpose by discussing them, since the possibility of their recurrence is most remote.

Reversed and remanded for further proceedings.