**UNITED STATES of America,**
**Appellee,**

v.

**Eddie Lee COWLEY, Appellant.**

**No. 71–1162.**

United States Court of Appeals,
Tenth Circuit.

Dec. 10, 1971.

Charles T. Hooker, Albuquerque, N. M., for appellant.

Victor R. Ortega, U. S. Atty., Michael P. Watkins, Asst. U. S. Atty., for appellee.

Before SETH, HAMLEY,* and McWILLIAMS, Circuit Judges.

HAMLEY, Circuit Judge.

Eddie Lee Cowley appeals from his conviction, under count one of a two-count indictment, for violation of 26 U. S.C. §§ 5861(d) and 5871, enacted as a part of the Gun Control Act of 1968, 82 Stat. 1213, 1234 (1968). We affirm.

Count one charges that, on November 18, 1970, at Gallup, New Mexico, Cowley knowingly and unlawfully possessed a firearm, as defined by 26 U.S.C. § 5845(a), which firearm was not registered to him in the National Firearms Registration and Transfer Record as required by Title II of the Gun Control Act of 1968. The firearm is described in count one as "a shotgun having a barrel of less than 16 inches in length, described as a Stevens Savage 12 gauge, with a barrel 14½ inches in length."

According to the evidence favorable to the Government, on November 18, 1970, Cowley was at the residence of Frances Slatton, the mother of his girl friend, Grace Holly, in Gallup, New Mexico. He and Grace Holly engaged in an argument and she became convinced he was intoxicated. He took a sawed-off shotgun out of his suitcase, put it under his coat and left the residence. At this time Grace Holly called the police. As the police drove into the driveway of the residence, Officer Ernest Montano saw Cowley throw what Montano thought to be a rifle into the bushes next to the house and then go back inside.

Montano and the other officers who had arrived on the scene went into the house at Grace Holly's request and talked to Cowley in a bedroom. The officers, believing that there was some kind of family dispute, asked Cowley to leave. Cowley was not under arrest at that time. As they were leaving the residence, Grace Holly told the officers about the gun and handed a box of shells to them. Cowley at first denied that he had a gun, then admitted that the gun was his and that he had thrown it into the bushes.

Sgt. Gonzales, one of the officers, retrieved the sawed-off shotgun from the bushes. Officer Montano then placed Cowley under arrest for violating a city

---

* Of the Ninth Circuit, sitting by designation.

ordinance by having possession of such a firearm. Sgt. Gonzales at that time advised Cowley of his constitutional rights, as formulated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Cowley first argues that the trial court erred in denying his motion to suppress the shotgun (plaintiff's exhibit 2). He contends that the gun was obtained by a search and seizure which, because neither pursuant to a warrant nor incident to a valid arrest, were illegal.

It is true that the officers had no warrant. In addition, the seizure was not incident to an arrest; the officers took possession of the gun before the arrest was made. It does not follow, however, that the seizure was unlawful.

■ The officers were called to the house by Grace Holly, a rightful occupant, and were thus rightfully on the premises. Officer Montano saw Cowley throw the gun into the bushes by the house, and knew exactly where the firearm was located. Under these circumstances, no warrant or arrest was necessary for the seizure of the weapon and its subsequent admission in evidence. See Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Cf. Capitoli v. Wainwright, 426 F.2d 868 (5th Cir. 1970). We conclude that the seizure was lawful.

Cowley contends that the trial court erred in denying the motion to suppress statements made by him in the presence of the Gallup police officers and of the special agents of the Federal Bureau of Investigation, and in admitting such statements into evidence.

■ The statements made to the police officers should have been suppressed, Cowley urges, because he was not first given the warnings required under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). But Miranda prescribes the warning to be given after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. The interrogation of Cowley by the police officers on the evening of November 18, 1970, occurred prior to his arrest and at a time when he had complete freedom of movement. Miranda does not apply to this interrogation and, under the circumstances, the statements to the Gallup officers were thus admissible.

The interrogation by F.B.I. agents occurred the following morning. The agents first showed Cowley the standard F.B.I. Warning and Waiver of Rights card and after ascertaining that Cowley could read, had him read the card. Cowley told the agents that he understood the warnings and he signed the waiver. It thus would appear that the Miranda requirements were fully met. But Cowley argues that he was not, at that time, in a condition to manifest an intelligent and knowing waiver of Miranda rights. This is true, he asserts, because he was then sick and upset after being awake all night in the drunk tank of the jail, there being no place to sleep except on the floor.

■ Cowley so testified. But F.B.I. agent Kenneth P. Walton testified that Cowley did not appear to be fatigued and looked normal. It was for the trial court to determine whether Cowley was in the physical and mental condition requisite to a legally sufficient waiver of his Fifth Amendment rights. We are not persuaded that the trial court erred in determining that the waiver was sufficient. We therefore uphold the determination.

Count one of the indictment, under which Cowley was convicted, describes the firearm as a "12 gauge" shotgun. At the trial the United States Attorney stipulated that the shotgun was a twenty-gauge shotgun. Because of this discrepancy, Cowley moved to dismiss the indictment. The trial court denied the motion and later instructed the jury that this discrepancy did not invalidate the charge. Cowley argues that the trial court erred in denying the motion and in giving the instruction.

■ The discrepancy in question in no way affected the validity of the charge under count one of the indictment. The real question presented is whether there was a fatal variance between the indictment and the evidence. A variance is not fatal unless the defendant could not have anticipated from the indictment what the proof would be, or unless a conviction on the indictment would not bar a subsequent prosecution for the same offense. Marvin v. United States, 279 F.2d 451, 453 (10th Cir. 1960).

■ Under the facts of this case neither of these possible bases of prejudice were present. Cowley knew exactly what gun he was charged with possessing, and count one provided sufficient detail as to the offense charged so that conviction thereon necessarily barred a subsequent prosecution for the same offense.

■ In addition, the judge's supplemental instruction that the variance between indictment and proof did not invalidate the charge was a correct statement under the law discussed above, and not a factual determination which invaded the province of the jury. The trial court did not err in these respects.

■ Cowley next contends that the provision of the Gun Control Act of 1968, under which he was convicted, requires self-incrimination in violation of the Self-Incrimination Clause of the Fifth Amendment, citing Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

Under the National Firearms Act, as it existed when Haynes was convicted, any possessor of a weapon as defined in the Act was compelled to disclose the fact of his possession by registration at the time he acquired possession. In Haynes, this was held to mean that a possessor must furnish potentially incriminating information which the Federal Government made available to state, local and other federal officials. The statute was thereafter revised so that the possessor no longer had this duty.

See 26 U.S.C. §§ 5812(a) and 5841(b). (Added Pub.L. No. 90–618, Title II, § 201, Oct. 22, 1968, 82 Stat. 1228–1229). The new legislation, still in effect, has been held free from the constitutional infirmity pointed out in Haynes. See United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). Cowley's contention thus lacks merit.

■ Cowley also asserts that the jury verdict that he is guilty on count one of the indictment is inconsistent with the verdict that he is not guilty on count two, and that the conviction under count one is for this reason invalid.

Assuming, but not deciding, that the verdicts are inconsistent, this does not render the conviction under count one invalid. See Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); Speers v. United States, 387 F.2d 698, 703 (10th Cir. 1967).

■ Cowley urges that the Government's exhibit III, certificate of non-registration, is "defective," and the trial court therefore erred in admitting it into evidence. Exhibit III is a certificate and authenticated statement from the Firearms Enforcement Office, that there was no record of a Stevens Savage sawed-off shotgun with a barrel fourteen and one-half inches in length, overall length of twenty-three inches and with no serial number, registered in the name of Cowley. Counsel for Cowley objected to the introduction of this exhibit on the ground that the certificate does not refer to the model number identification, nor to the caliber or gauge of the shotgun. The objection was overruled.

Since the document showed that no sawed-off shotgun was registered to Cowley that met the description of the shotgun in question, the certificate was not rendered inadmissible because the additional data referred to by Cowley was not mentioned therein. The court properly instructed the jury that they were to decide what weight should be given to this evidence.

■ Cowley contends that the evidence is insufficient to support the verdict of guilty on count one. He calls attention to his testimony that he borrowed the shotgun from another and did not learn that the gun was "illegal" until the next day. Cowley testified that he then tried to find the man from whom he had borrowed the gun, and hunted all over Gallup for him. According to Cowley, late that night he was told that the owner of the gun was at Church Rock, New Mexico. He was leaving the Frances Slatton residence with the gun the next day, to return it to its owner, when the officers drove up, Cowley testified. Cowley also testified that he did not know that the type of gun he had in his possession had to be registered or that it had no serial number. Thus, according to Cowley, evidence of the essential element of wrongful intent was lacking.

The jury was not required to accept Cowley's version of the incident. Moreover, the evidence is clear that Cowley had the gun in his possession at the time he was seen on the porch, and prior thereto inside the house, and, at those times, he knew it was illegal for him to possess the gun. We hold the evidence sufficient.

■ Finally, Cowley argues that the trial court erred by exerting undue influence on the jury in an effort to obtain a verdict after the jury had advised the court that it was deadlocked. In connection with this argument Cowley also contends that additional instructions given in an effort to obtain a verdict were erroneous and prejudicial.

As a part of the general instructions given upon submission of the case to the jury, the trial court instructed as set out in the margin.[1] The quoted instruction has some similarity to a so-called "Allen" instruction (Allen v. United States, 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528 (1896)), but without the features which, in some "Allen" instructions, have been criticized as coercive. Counsel for Cowley voiced no objection to the instruction at that time.

The jury began its deliberation at 12:07 p.m. on January 11, 1971. At 2:14 p.m. the trial judge received a note from the foreman of the jury asking that the charges set out in the indictment be reread "since a confusion has developed among us as to which charge is which." The court called the jury back into the courtroom and reread the charges as set out in the indictment. No objection was taken and the jury was excused at 2:15 p.m.

At 4:10 p.m. the same day, the judge received another note from the foreman stating that the jury could not reach a verdict. The jury was then returned to the courtroom and the judge inquired of the foreman if some additional time would help the jury arrive at a verdict. The foreman replied that "possibly some additional time may have value." The judge thereupon repeated the part of the general instructions quoted in note 1 and added: "I'm going to ask you ladies and gentlemen, to go back out and see if it isn't possible to arrive at some verdict one way or the other." At this time counsel for Cowley made no objection to these instructions.

At this point, the foreman of the jury stated that he had misunderstood the judge's initial question, and should have answered "No." A colloquy then occurred during which the judge three

1. "In order to return a verdict, each juror must agree to it. Jurors have a duty to consult with one another to deliberate with a view to reaching an agreement. If it can be done without violence to individual judgment.

"Each juror must decide the case for himself but only have an impartial consideration of the evidence with his fellow jurors.

"In the course of deliberation, a juror should not hestitate to re-examine his own views and change his opinion if convinced it is erroneous.

"No juror is to weigh the effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict."

times inquired, in effect, whether it was not possible for the jury to reach a unanimous verdict. Each time the foreman gave a negative response. The court then observed, in effect, that if a little more time would help out, it "certainly should be entertained in order to prevent having to go through another trial." The foreman then replied: "Well, with that thought in mind, maybe we should try to." Again there was no objection and, at 4:19 p.m. the jury resumed its deliberations.

At 5:00 p.m. that day, the judge received a third note from the jury reading: "Since the defendant is charged with possession of a *12 gauge* gun, and the exhibit is a 20 gauge weapon, is the charge invalid?" The judge announced to opposing counsel, after reading the note to them, that he would send back to the jury an answer reading: "No, it does not make the charge invalid." Consistent with his view that the variance rendered the indictment invalid, counsel for Cowley objected to the giving of such an answer.

Counsel at this time also moved for a mistrial because of the effort the court had made, as described above, to have the jury continue its deliberations. Counsel criticized this action as the exertion of "undue pressure." The motion was denied, and at 5:03 p.m. the judge presumably conveyed to the jury his negative answer to the question they had propounded. The jury reached a verdict of guilty moments later and returned to the courtroom at 5:05 p.m. to announce the verdict.

As indicated above, counsel for Cowley did not take a timely objection to the repeated Allen-type instruction, nor to the colloquy between the judge and jury foreman described above. In any event, we are of the view that the trial judge proceeded with utmost discretion and that no coercion was exerted upon the jury. The inquiries made of the foreman were for the purpose of probing the possible value of further deliberations and were especially warranted in view of the foreman's previous misunderstanding of the judge's question.

The Allen-type instruction given when the jury returned to the courtroom was relatively bland as compared to that approved in the *Allen* decision. Moreover, it was but a repetition of an instruction given, without objection, as part of the general instructions before the jury began its deliberations. In initially giving this instruction as a part of the general instructions, the trial court followed the suggestion made by this court in United States v. Wynn, 415 F.2d 135, 137 (10th Cir. 1969). *See also,* Munroe v. United States, 424 F.2d 243, 247 (10th Cir. 1970).

Affirmed.