**UNITED STATES of America, Appellee,**

v.

**Harry LEVINE, Defendant, Appellant.**

**No. 76–1543.**

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1977.

Decided Feb. 2, 1978.

Richard L. Dahlen, Boston, Mass., by appointment of the court for appellant.

James E. O'Neil, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant was convicted of conspiring with five other people to possess, and to possess with intent to distribute, cocaine, in violation of 21 U.S.C. § 846. The indictment included, in addition to the conspiracy count, eight substantive counts. Four of these, relating to drugs other than cocaine, were severed prior to trial. Appellant was acquitted of the one substantive count in which he was named. All but one of the other defendants entered pleas before trial. That one, Cynthia Echeverria, was acquitted of the conspiracy charge. She was not named in any substantive count.

According to the government's evidence, the alleged conspiracy encompassed six distinct transactions. The only factor common to each transaction was that each was a sale of cocaine to Paula Hallquist, the government's principal witness, and one of two co-purchasers. The first purchase was in July of 1972 from Kulis and Mercuri. The second, in August, 1972, involved Kulis, Mercuri, a friend of Mercuri, Paige, and Klein. The third purchase, in September, 1972, was from Paige and Antonios. The fourth transaction took place in March, 1973, and involved Mercuri and Echeverria. Number five, in June, 1973, was from Paige and someone named Greg.

The final episode, in August and November of 1973, was the first to involve appellant directly. In August the purchasers went to New York City with Paige. There they paid $4500, but no cocaine was delivered. Paige did, however, introduce them to appellant who, according to the witness, went out looking for the cocaine and promised that when he did get it, he would give it to Paige to deliver. The purchasers stopped at Paige's house in Gloucester, Massachusetts, in November, 1973, to complain about the failure of delivery. There they found Paige, appellant, and Antonios. Appellant gave them some cocaine. The witness told appellant that the quality of the cocaine was not as good as the cocaine purchased on the first trip to New York (June, 1973). Appellant replied "that he gets it from different people and different qualities, different kinds of cocaine. He doesn't always get it from the same people all the time." The witness then left, after getting a promise that more cocaine would be delivered soon.

Appellant's principal claim on appeal is that there was a material, prejudicial variance between the indictment and the facts proved at trial. Whereas only a single conspiracy was charged, the proof, according to appellant, went towards at least two separate conspiracies, only one of which involved him. Appellant concedes that the evidence is sufficient to support a conviction for conspiracy as to the final transaction. We would add that appellant's statement quoted above is sufficient to link him to the June, 1973, transaction as well. Appellant argues, however, that nothing links him to the earlier transactions and that the government's proof shows that these earlier transactions were the product of one or more distinct conspiracies. For purposes of this appeal we shall assume that appellant is correct.[1]

The law is settled that when the government is allowed to prosecute more than one conspiracy under a single indictment and at a single trial, the resultant variance between indictment and proof is error. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Bertolotti,* 529 F.2d 149 (2d Cir. 1975); *United States v. Johnson,* 515 F.2d

1. The government argues that the jury could find that all defendants were linked in one conspiracy formed in August of 1972 and that "Paige's later connections with Levine allow a finding that Levine was aiding this illegal concert." Even if this theory were correct, of course, the July, 1972, transaction would be outside the conspiracy.

730 (7th Cir. 1975) (Stevens, J.). These cases also establish that this error only requires reversal if it prejudices the defendant. The source of prejudice in a case such as this is the transference of guilt to an individual defendant involved in one conspiracy from evidence incriminating defendants in a conspiracy in which the particular defendant was not involved.[2]

The courts evaluating the significance of such prejudice have focused on two effects. First, the proliferation of conspirators in the case makes it difficult for the jury to focus on each specific defendant and on the evidence properly associated with that defendant. The presence of this sort of prejudice will depend on the number of conspiracies and conspirators involved in the case, the similarity of the objects of the conspiracies, and the length of the trial. *United States v. Bertolotti, supra,* 529 F.2d at 156–57; *see also Kotteakos v. United States, supra.*

Second, aside from problems of numbers, the jury may be subject to confusion about the legal limitations on the use of certain evidence. Evidence that goes only to conspiracies in which a particular defendant is not involved should not be admitted against that defendant. Therefore the court ought to give an instruction limiting the use of the evidence, and the adequacy of the instruction given will determine whether the defendant was prejudiced. *United States v. Johnson, supra,* 515 F.2d at 733–34.

On the facts of this case, we cannot say that the appellant was significantly prejudiced. We are satisfied that the "error did not influence the jury, or had but very slight effect." *Kotteakos, supra,* 328 U.S. at 764, 66 S.Ct. at 1248. The trial was a relatively simple one. Only two of the six alleged conspirators were on trial. That compares with the 29 indicted and 31 unindicted conspirators of whom 17 were given to the jury in *Bertolotti,* and 32 indicted and four unindicted conspirators of whom 13 went to the jury in *Kotteakos.* The *Johnson* case involved seven indicted conspirators of whom five went to trial. In *Berger,* the only one of these four cases that was an affirmance, there were four defendants from an indictment that named eight. The jury should not have had too much trouble keeping the evidence straight as to two defendants,[3] and certainly this is not a case of defendants being "tried *en masse* for the conglomeration of distinct and separate offenses committed by others." *Kotteakos, supra,* 328 U.S. at 775, 66 S.Ct. at 1253. Moreover, the prejudice should be minimized by the fact that those transactions not directly involving appellant were of the same character as the ones that did involve him[4] and by the fact that the trial was relatively simple and short, lasting less than four days.[5]

It is true that the jury was never told that it could find separate conspiracies and that if it did so find then the evidence going towards one could not be used against a

2. There is no problem of surprise here since the indictment did encompass all facts on which the government relied in its case against appellant. *See Berger v. United States, supra.* Also, appellant will be secure from further prosecution for conspiracies encompassed by this indictment. *See id.*

3. Having once decided that Echeverria was not part of the conspiracy, the jury had but one conspirator before it. The task of deciding what evidence pertained to the one individual could not have been very confusing. Moreover, we cannot ignore the possibility that appellant might have been helped by the introduction of the other evidence relating to the other defendants in that he might have appeared as a less important participant in a larger operation. We note in this regard that

appellant's trial attorney argued (unsuccessfully) in favor of submitting to the jury all the counts of the indictment relating to cocaine rather than just those naming the trial defendants. Counsel's stated reason was that "I think, your Honor, it shows, at least the number of counts, that Levine looks much smaller" than other alleged conspirators.

4. *Compare United States v. Bertolotti,* 529 F.2d 149, 157 (2d Cir. 1975) ("[T]he crimes of the various appellants . . . scarcely resembled one another", implicating appellants in a series of diverse and bizarre "rip-offs", not all of which any one appellant was party to.)

5. *Compare United States v. Bertolotti, supra* (lasting four weeks).

defendant not party to that conspiracy.[6] Nonetheless, the court gave frequent, detailed instructions limiting the use of coconspirator hearsay testimony. The jury was told that it should consider only the appellant's own acts and statements in considering whether appellant was a member of a conspiracy and that only if the jury found that appellant met that test could it use evidence relating to other conspirators against appellant. Also the court gave the general instruction that appellant could not be found guilty of conspiracy unless the jury found that he conspired with at least one other person to do the acts alleged.

We must conclude that the jury found that Levine did knowingly enter a conspiracy with at least one other person to distribute cocaine. As we said at the outset, there is sufficient evidence to permit that finding. We see no reason to believe that the jury did not make that finding solely on the basis of permissible evidence and concentrating on no individual other than appellant. The jury acquitted appellant's codefendant at trial. Because appellant was the only person convicted of conspiracy by this jury, the most that appellant can claim is that individuals were included in the indictment and evidence whom the evidence showed were not part of the conspiracy of which appellant was convicted. We have said before that usually this kind of variance is not prejudicial. *United States v. Brown,* 495 F.2d 593, 599 n. 7 (1st Cir. 1974). No special prejudice is shown here.

■ Appellant also asserts as reversible error the prosecutor's statement to the jury during his closing argument that "[w]e have got a double duty, prosecute the guilty, protect the innocent." We have repeatedly held that it is improper for a prosecutor to inject personal belief about a defendant's guilt into a closing argument. *United States v. Gonzalez Vargas,* 558 F.2d 631, 633 (1st Cir. 1977) (listing six other cases); *United States v. Farnkoff,* 535 F.2d 661, 668 (1st Cir. 1976). The prosecutor's assertion in this case is from the same objectionable mold, effectively putting the government's credibility on the side of guilt. *United States v. Lamerson,* 457 F.2d 371, 372 (5th Cir. 1972). We are considerably disappointed that prosecutors continue to ignore our strongly worded warnings. Nonetheless, we are not yet ready to rule that such mistakes are not curable.

"[A] timely curative instruction directed particularly to the prosecutor's comments", *United States v. Gonzalez Vargas, supra,* 558 F.2d at 633, was given here. The court, at the very beginning of instructions, repeated the statement and said that "that has no place in this particular case. He is speaking generally as to what he philosophically believes the duty of the government to be. No one has been proven guilty here in this case, and it's up to you, the jury, to determine the innocence and the guilty [sic] of the defendants in this particular case." The court followed these remarks with an introduction to the presumption of innocence. We hold that this instruction was adequate to cure the prosecutor's mistake.[7]

*Affirmed.*

**6.** *United States v. Johnson, supra,* 515 F.2d 730, 733–34 and n. 10 (7th Cir. 1975) held that such an instruction is required when the possibility of a variance appears and that failure to give such an instruction is plain error. We agree that such an instruction would be good practice, but we cannot agree that failure to give it is necessarily plain error. *See United States v. Brown,* 495 F.2d 593, 598–99, n. 5 (1st Cir. 1974). Where, as here, no such instruction is requested and the admission of evidence concerning others was never challenged, we will not require the court to give the instruction of its own initiative.

**7.** The instruction was "clear and accurate" as required by *United States v. Farnkoff,* 535 F.2d 661, 668 (1st Cir. 1976). Appellant's counsel at trial objected to the instruction as given not for its substance but for its not being sufficiently stern. We do not now intend to dictate how strongly-worded an instruction must be. That is left to the discretion of the trial judge.