**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Anthony MORRIS,
Defendant-Appellant.**

**No. 78–1974.**

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 26, 1979.
Decided June 16, 1980.

Nancy E. Rice, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty. and Susan R. Roberts, Asst. U. S. Atty., Denver, Colo., on brief), for plaintiff-appellee.

Richard M. Borchers, Westminster, Colo., for defendant-appellant.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

John Anthony Morris (Morris or John) appeals his jury conviction of conspiring to embezzle funds belonging to a federally insured savings and loan association in violation of 18 U.S.C. §§ 371 and 657.

Morris was charged in a two-count indictment filed August 22, 1978. Count I charged Carol Ann Morris, appellant's wife, with embezzling approximately $137,000.00 in funds belonging to her employer, Equity Savings and Loan Association, from September 7, 1977 to April 11, 1978. Count II charged Morris, his wife and Rita Hamling, with conspiring to embezzle funds belonging to a federally insured lending institution from September 1, 1977, through the date of indictment.

Before trial, which began on October 4, 1978, Carol Morris pleaded guilty to the

charges contained in Count I of the indictment in exchange for the dismissal of the Count II charge against her. She was sentenced to two and one-half years imprisonment.

Rita Hamling was granted a judgment of acquittal at the close of the Government's case-in-chief. Trial on the remaining charges lodged against Morris continued. A sentence of eighteen months imprisonment was imposed upon Morris following the jury's rendition of its verdict of guilty. Execution of sentence has been stayed pending our disposition.

The issues presented on appeal are whether the District Court: (1) improperly allowed certain evidence to remain before the jury following Hamling's acquittal; (2) erroneously allowed Morris' conviction to stand despite a fatal variance between the charges contained in the indictment and proof at trial; (3) impaired his right to trial before a fair and impartial jury; and, (4) erroneously denied his motion for judgment of acquittal made at the close of the Government's case-in-chief.

### Evidentiary Problems

We turn first to Morris' claim that the District Court erred in allowing certain evidence, conditionally received during the Government's case-in-chief, to remain before the jury following Rita Hamling's acquittal.

The Government's theory at trial was premised on the belief that Carol and Rita formed the conspiracy in September, 1977, and that John thereafter joined it. As a result, both testimonial and documentary evidence was introduced attempting to show the involvement of Carol and Rita in the conspiracy prior to John's participation. The overwhelming majority of this evidence dealt with Carol's actions; little, if any, was tied to Rita's alleged involvement. Much of the evidence was received subject to the Government's ability and obligation to connect it to a conspiracy in which the defendants participated.

At the close of the Government's case, the Court ruled, pursuant to Rules 104(a) and 801(d)(2)(E), F.R.E., 28 U.S.C., that: the independent evidence adduced at trial proved by a preponderance that Rita Hamling and Carol Morris conspired to embezzle funds belonging to a federally insured lending institution as early as September 26, 1977; John Morris thereafter joined the conspiracy; and, the challenged evidence arose out of actions taken in the course of and in furtherance of the objects of the conspiracy. [R. Vol. III, p. 225]. Based on this determination, numerous exhibits and testimony were admitted. [R. Vol. III, pp. 224–233]. Concurrent motions for judgments of acquittal made on behalf of both Hamling and Morris were denied.

The following morning, after reconsidering both defendants' motions for acquittal, the Court ruled:

THE COURT: Well, I've reached the conclusion that there isn't enough evidence against Rita to submit this case to the jury. I mean on conspiracy. I think there is evidence that might convict her as an aider and abettor, for example, if it had been charged. But she's not charged as an aider and abettor.

There is no evidence in the record that shows that she did any participation other than what has been called to attention here today that's in the—well, the handwriting expert report regarding the signatures on two or four of the money orders. But those money orders—those particular ones haven't been traced as showing that there wasn't cash or its equivalent paid for those. . . .

I just think she was wrongly charged as a coconspirator in this case. And I can't in good conscience submit the case to the jury, because if I did and she were convicted, I couldn't sentence her, and I mean to confinement, so I just would prefer to feel clean about it and not take the chance. . . . So I'm going to grant the motion for judgment of acquittal as to Rita Hamling. [R. Vol. IV, pp. 5–7].

After the jury was informed of Hamling's acquittal, no motion was made by

Morris to strike evidence previously admitted covering the period of Rita's alleged involvement in the conspiracy. Furthermore, the Court did not strike the evidence *sua sponte*. Trial continued. Morris was subsequently found guilty.

■ It is clear that "statements made by one conspirator may be used not only against the declarant but also against his coconspirators where made during the course and in furtherance of the conspiracy." *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Rios*, 611 F.2d 1335 (10th Cir. 1979). However, assertive conduct or declarations made by one conspirator "either before the formation or after the termination of the conspiracy are not admissible against a co-conspirator." *Mares v. United States*, 383 F.2d 805, 810 (10th Cir. 1967). *See also: Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *United States v. Andrews*, 585 F.2d 961 (10th Cir. 1978). The rationale underlying the exclusion of such statements "is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence." *Anderson v. United States*, 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974).

■ Assuming that the challenged evidence falls within the purview of the Hearsay Rule[1], we, nevertheless, hold that its admission did not constitute reversible error.

In *Beckwith v. United States*, 367 F.2d 458 (10th Cir. 1966) this Court faced the precise issues presented here. There, it was argued that testimony relating to acts of a coconspirator, committed prior to the earliest date Beckwith could have joined the scheme, should have been excluded. We recognized that the challenged testimony should not have been admitted, or, if already admitted, thereafter stricken and the jury instructed to disregard it.[2] Nevertheless, we held that where the court carefully and thoroughly instructed the jury on the requirements which must be met prior to their consideration of the acts and declarations of others, and counsel failed to object to the instructions as given, no reversible error occurred.

■ Our decision in *Beckwith* controls in the instant case. The Court, in the case at bar, carefully and correctly charged the jury on the matters enumerated in *Beckwith*. Specifically, the jury was instructed that Morris could not be bound by the acts or declarations of the other participants until it was established, beyond a reasonable doubt, that a conspiracy existed and that he was one of its members.[3] We presume that the jurors conscientiously observed the instructions and admonitions of the Court. Speculation that this was not done cannot now be employed in assailing the jury's verdict, in the absence of a showing of facts proving otherwise. *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 902, 34 L.Ed.2d 688 (1973). *See also: Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144 (10th Cir. 1978), *cert. denied*,

1. The evidence presented by the Government prior to John's first active involvement—January 10, 1978, consisted almost entirely of Carol and Rita's nonverbal conduct. Even though we recognize that "nonverbal conduct of a person, if it is intended by him as an assertion" may constitute hearsay, we question whether acts of embezzlement and misappropriation which occurred prior to John's involvement were intended as a substitute for oral or written expression. Rule 801, F.R.E., 28 U.S.C. In our view, the acts simply were not conduct "such as the act of pointing to identify a suspect in a lineup, . . . clearly the equivalent of words, assertive in nature, and to be regarded as a state-

ment." Advisory Committee Note, Subdivision (a), Rule 801, F.R.E., 28 U.S.C. Thus, the hearsay rule may not have had any application. *See Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); Weinstein's Evidence, Vol. 4, para. 801(a)[02].

2. The granting of a motion for mistrial may be necessary in extreme cases.

3. This case arose before our decision in *United States v. Andrews, supra*. We have held that *Andrews* does not apply retroactively. *United States v. Petersen*, 611 F.2d 1313 (10th Cir. 1979); *United States v. Rios, supra*.

439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978); *United States v. Smaldone*, 485 F.2d 1333 (10th Cir. 1973), *cert. denied*, 41€ U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974).

Counsel for Morris tendered some instructions. Significantly, however, none related to the admissibility of the challenged evidence. Furthermore, despite the Court's inquiry as to whether counsel had any objection to the charge, none was lodged.

We further observe that Carol Morris was called as a witness by the defense and examined thoroughly concerning the criminal activities she engaged in prior to John Morris' involvement. Moreover, our view of the record indicates that the evidence strongly supports the jury's verdict. In sum, while we believe that the Court should have instructed the jury to disregard the evidence, in the absence of its admissibility on other grounds, we hold that such failure did not constitute reversible error.

### Variance Issues

■ Morris contends that the "evidence adduced at trial establishes facts different from those alleged in [the] indictment" and that this variance was fatal to the Government's case. *Dunn v. United States*, 442 U.S. 100, 104, 99 S.Ct. 2190, 2193, 60 L.Ed.2d 743 (1979). In assessing this claim, the key inquiry "is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). We have consistently held that such a variance occurs when the accused could not have anticipated from the indictment what evidence would be presented at trial or when a conviction based on the indictment would not bar subsequent prosecution. *United States v. Freeman*, 514 F.2d 1184 (10th Cir. 1975); *United States v. Cowley*, 452 F.2d 243 (10th Cir. 1971). Another source of prejudice is the transference of guilt to an accused from incriminating evidence presented in connection with the prosecution of another in the same trial for a crime in which the accused

did not participate. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974); *United States v. Bertolotti*, 529 F.2d 149 (2d Cir. 1975); *United States v. Sperling*, 506 F.2d 1323 (2d Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975).

Morris' complaint stems from the variance between the indictment's allegation that "[f]rom on or about September 1, 1977, and continuously thereafter up to and including the date of the filing of this indictment . . . CAROL ANN MORRIS, . . . JOHN ANTHONY MORRIS, and RITA JEAN HAMLING . . . willfully and knowingly did . . . conspire . . . to violate Title 18, United States Code, Section 657" [R. Vol. I, pp. 1–2], and proof adduced at trial that the conspiracy could not have formed until January 10, 1978.[4]

Morris does not contend that he was surprised or that the preparation of his defense was impaired. Our review of the record does not indicate otherwise. Similarly, there simply is no danger of double jeopardy. Thus, we must decide only whether the evidence presented by the Government, concerning Carol and Rita's involvement in criminal activity prior to John's participation, so tainted his conviction as to require reversal.

■ Courts have generally focused on three areas in determining whether such a variance has affected the substantial rights of an accused: *First*, whether the proliferation of separate crimes or conspiracies presented in the case impaired the jury's ability to segregate each individual defendant's actions and the evidence associated with his participation; *Second*, whether confusion among members of the jury concerning the legal limitations on the use of certain evidence resulted from the variance; and, *Third*, the strength or weakness of the evidence underlying the jury's conviction. *United States v. Butler, supra; United States v. Levine*, 569 F.2d 1175 (1st Cir.

---

4. This, of course, is based on Rita Hamling's acquittal.

1978), *cert. denied*, 436 U.S. 928, 98 S.Ct. 2824, 56 L.Ed.2d 771 (1978). On the facts of this case, we hold that the variance "did not influence the jury, or had but very slight effect". *Kotteakos v. United States, supra*, 328 U.S. at p. 764, 66 S.Ct. at p. 1248.

This certainly was not a case where the defendants were "tried *en masse* for the conglomeration of distinct and separate offenses committed by others". *Id.* at p. 775, 66 S.Ct. at p. 1253. Only two of the three individuals originally charged were brought to trial, and one of them was acquitted. "Numbers are vitally important in trial, especially in criminal matters." *Id.* at p. 772, 66 S.Ct. at p. 1252. As a general rule, "[t]he possibility of prejudice resulting from a variance increases with the number of defendants tried and the number of conspiracies proven." *United States v. Heath*, 580 F.2d 1011, 1033 (10th Cir. 1978) (McKay, J. dissenting), *cert. denied sub nom. Babb v. United States*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979), *citing to, Blumenthal v. United States*, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). *But cf. United States v. Petersen, supra; United States v. Watson*, 594 F.2d 1330 (10th Cir. 1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *United States v. Heath, supra* (each including a relatively large number of defendants). In our view the converse is also true. This was not the type of case exemplified by those such as *Kotteakos* (32 indicted, 4 unindicted—13 went to the jury); *Butler* (41 count indictment, 23 defendants); *Bertolotti* (29 indicted, 31 unindicted, 17 went to the jury); and *Sperling* (28 indicted).

Significant, too, in our determination, is the degree of complexity of the issues involved in the case and the similarity of the transactions involved. *United States v. Levine, supra.* We observe that while this case was, at times, presented in a confusing fashion, still, in its overall context, the issues presented were relatively simple. Trial on the merits lasted less than four days.

The similarity of the challenged transactions not involving Morris directly militates against our finding significant prejudice. *Id.* at p. 1177.

█ We, of course, agree that evidence relevant only to a particular defendant should not be admitted against others, or if already admitted, stricken.[5] *Beckwith v. United States, supra; United States v. Levine, supra; United States v. Johnson*, 515 F.2d 730 (7th Cir. 1975). Unlike the Court in *Johnson*, however, we cannot agree that the erroneous admission of such evidence invariably leads to plain error.

In the instant case no limiting instruction was requested by Morris. He failed to object to the instructions as given. Morris did not move to strike the evidence, conditionally received, following the Government's failure to establish a proper foundation for its admission. Under these circumstances, we will not cast the burden on the trial court, absent grave error which amounts to a fundamental miscarriage of justice, to fashion appropriate remedies *sua sponte.* *Accord: Beckwith v. United States, supra; United States v. Levine, supra. See also: United States v. Harper*, 579 F.2d 1235 (10th Cir. 1978), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978). In any event, the possibility of jury confusion must be determined on an *ad hoc* basis.

In our view, it was unlikely, in view of the instructions given by the District Court, that the jury was confused concerning the legal limitations imposed on the evidence presented concerning Carol's and Rita's involvement prior to John's participation. The jury was cautiously charged that it could only consider Morris' own acts and declarations in determining whether he was a member of the conspiracy. Comprehensive instructions on the prosecutor's burden of proving, beyond a reasonable doubt, the existence of a conspiracy and Morris' participation therein were given. The jurors were specifically admonished that consideration of the acts and declarations of others

---

5. We assume, for purposes of this case, that the evidence presented was not relevant in Morris' case.

against Morris was forbidden, until the Government established that a conspiracy existed and that he was one of its members.

These factors, combined with the strong showing of guilt, convince us that the jury's verdict was based solely on consideration of permissible evidence. We hold that no fatal variance occurred.

### Method of Jury Selection

Morris argues that the District Court impaired his right to a fair and impartial jury by substituting a system of peremptory strikes for the common-law method of peremptory challenges now allegedly embodied in Fed. Rules Cr.Proc. rule 24, 18 U.S.C.A.

 The right to a specific number of peremptory challenges and the manner of their exercise is not constitutionally secured. *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). Nevertheless, the peremptory challenge has been characterized as "one of the most important rights secured to the accused". *Id.* at 219, 85 S.Ct. at 835; *quoting, Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). "Any system for the impanelling of a jury that prevents or embarrasses the full, unrestricted exercise by the accused of that right, must be condemned." *Pointer v. United States, supra*, at 408, 14 S.Ct. at 414. A "denial or impairment of the right is reversible error without a showing of prejudice". *Swain v. Alabama, supra*, 380 U.S. at 219, 85 S.Ct. at 835. Within the confines of these strictures, however, district courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general. *United States v. Redmond*, 546 F.2d 1386, 1389 (10th Cir. 1977), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1645, 56 L.Ed.2d 83 (1978); *United States v. Durham*, 587 F.2d 799 (5th Cir. 1979); *United States v. Turner*, 558 F.2d 535 (9th Cir. 1977); *United States v. Haldeman*, 559 F.2d 31, 80 (D.C.Cir.1976) (en banc), *cert. denied sub nom. Mitchell v. United States*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Mayes*, 512 F.2d 637, 644 (6th Cir. 1975),

*cert. denied*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975); and *United States v. Williams*, 447 F.2d 894, 896 (5th Cir. 1971).

In *Swain v. Alabama, supra*, the Court canvassed the history of both the peremptory challenge and the peremptory strike. Discussing the system of "struck" juries, the Court stated:

> The system of struck juries also has its roots in ancient common-law heritage. Since striking a jury allowed both sides a greater number of challenges and an opportunity to become familiar with the entire venire list, it was deemed an effective means of obtaining more impartial and better qualified jurors. Accordingly, it was used in causes of "great nicety", or "where the sheriff [responsible for the jury list] was suspected of partiality." 3 Bl. Comm. 357. It is available in many States for both civil and criminal cases. The Alabama system adheres to the common-law form, except that the veniremen are drawn from the regular jury list, are summoned to court before striking begins and the striking continues until 12 rather than 24 remain. It was adopted as a fairer system to the defendant and prosecutor and a more efficacious, quicker way to obtain an impartial jury satisfactory to the parties. *Swain v. Alabama, supra*, 380 U.S. at 217–218, 85 S.Ct. at 834–835. [Footnotes omitted].

Fed.Rules Cr.Proc. rule 24, 18 U.S.C.A., delineates the number of peremptory challenges available to both the Government and defendants. It does not, however, prescribe the manner of their exercise. The method chosen in this case, while allowing the proper number of peremptory challenges to each side, essentially constituted a "struck" jury system. Thirty-one prospective jurors were called by the Court. Of these 31, 22 were qualified by the Court preliminarily. Over objection, the Court directed defense counsel to exercise peremptory challenges alternatively with the Government against the entire panel. The Government was granted six challenges and the defendants were granted ten challenges, to be exercised jointly. When all

the challenges were exercised, the remaining six individuals constituted the jury.[6] The alternate was chosen by the Court from the prospective jurors not previously qualified.[7]

This method does deviate from the method generally employed by the district courts in criminal cases. We cannot, however, hold that the method employed in anywise deprived the defendant of a fair and impartial jury. Other courts faced with this question are in accord with our view. *United States v. Mathis*, 550 F.2d 180 (4th Cir. 1976) (per curiam), *cert. denied sub nom. Moore v. United States*, 429 U.S. 1107, 97 S.Ct. 1140, 51 L.Ed.2d 560 (1977); *United States v. Keen*, 508 F.2d 986 (9th Cir. 1974), *cert. denied*, 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *United States v. Sams*, 470 F.2d 751 (5th Cir. 1972); *United States v. Williams*, 447 F.2d 894 (5th Cir. 1971); *Amsler v. United States*, 381 F.2d 37 (9th Cir. 1967).

We agree with the observations in *United States v. Sams, supra*:

> It is difficult to conceive of a fairer method of giving the defendant an opportunity to make a full choice of the range of the venire of 32 persons (12 to serve, 10 subject to challenge by the defense, 6 subject to challenge by the prosecution, and 2 to be chosen by alternative strikes out of the remaining 4 to serve as alternates) than was used in the *Williams* case. It embodied the system whereby all 32 veniremen were initially qualified and were subjected to the *voir dire* by the court and counsel. Thus, before counsel made their first strike or peremptory challenge they had the full range of possibilities of all jurors who might conceivably sit on the case available to them for comparison. *United States v. Sams, supra*, at 754.

■ We hold that the District Court did not err in employing a "struck" jury system as opposed to the traditional use of peremptory challenges.

*Remaining Contentions*

■ Morris moved for judgment of acquittal at the close of the Government's case-in-chief pursuant to Fed. Rules Cr. Proc. rule 29, 18 U.S.C.A. The motion was denied. At the close of all the evidence, Morris failed to renew his Rule 29 motion. We have consistently held that "a defendant who moved for a judgment of acquittal at the close of the government's case must move again for a judgment of acquittal at the close of the entire case if he thereafter introduces evidence in his defense because, by presenting such evidence, the defendant is deemed to have withdrawn his motion and thereby to have waived any objection to its denial." *United States v. Lopez*, 576 F.2d 840, 842 (10th Cir. 1978). In any event, we hold that the record supports the District Court's denial of Morris' motion for judgment of acquittal.

WE AFFIRM.

---

**6.** Both defendants Morris and Hamling waived their right to a jury of twelve and stipulated to trial before a jury of six.

**7.** It is not certain exactly how the court chose the alternate. The actual jury selection process itself was not transcribed at the request of the defendant. Nevertheless, the preliminary discussions held at the bench indicate that the method outlined above was employed in the actual selection of the jurors.