945 F.2d 411
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lewis Nathaniel DIXON, Defendant-Appellant.
 No. 90-1197.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 1, 1991.
 
 Before McKAY, Chief Judge, and BARRETT and HOLLOWAY, Circuit Judges.
 ORDER AND JUDGMENT*
 McKAY, Chief Judge.
 
 
 1
 Mr. Lewis Nathaniel Dixon was found guilty by a jury of one count of conspiracy to possess cocaine with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846, and six counts of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Mr. Dixon now appeals that conviction. He asserts that the evidence was insufficient to support his conviction on any of the counts and that the court committed reversible error by admitting certain evidence in violation of Federal Rules of Evidence 403 and 404(b).
 
 I. FACTS
 
 2
 The Drug Enforcement Administration received information through a confidential informant that one Whittier Buchanan was distributing cocaine. The informant took an undercover agent to Mr. Buchanan and introduced her as a friend. The undercover agent made four separate purchases of cocaine from Mr. Buchanan. Mr. Buchanan spoke freely to the agent about his source of supply, whom he identified as his brother. Mr. Dixon was the only sibling of Mr. Buchanan who lived in the area. Mr. Buchanan also spoke to the agent about previous drug transactions involving his brother and the fact that his brother had forced Mr. Buchanan to absorb losses for cocaine sales that Mr. Buchanan had made on credit.
 
 
 3
 Each time that the agent wished to make a purchase from Mr. Buchanan, Mr. Buchanan made a telephone call. Mr. Buchanan said he made the call to a pager. A few minutes later, Mr. Buchanan got a return call. Mr. Buchanan and the agent then drove to another location. Each time, Mr. Dixon appeared at the location. Each time, Mr. Buchanan left the agent to talk with Mr. Dixon before delivering the cocaine to the agent.
 
 
 4
 Neither the agent nor other surveillance teams ever saw Mr. Dixon actually hand the cocaine to Mr. Buchanan. However, on one occasion, when Mr. Buchanan handed the agent less cocaine than she paid for, Mr. Buchanan walked back to Mr. Dixon's car, reached in, returned to the agent and handed her the rest of the cocaine.
 
 
 5
 On another occasion, the agent actually spoke to Mr. Dixon, but he refused to give his name. He observed the exchange of cocaine and money between Mr. Buchanan and the agent. Holding the cocaine in her hand, the agent told Mr. Dixon that she wished to do more business. Mr. Dixon handed her a business card for a legitimate vending machine business which he owned and told the agent to call him if Mr. Buchanan was unavailable.
 
 
 6
 The agent arranged a meeting with Mr. Dixon. At that meeting, he denied any involvement in the drug business, claiming only to be interested in the vending machine business. However, just prior to meeting with the agent, Mr. Dixon noticed a surveillance car containing two more agents and stared at it. Shortly after that meeting, Mr. Buchanan told the informant that Mr. Dixon had identified the undercover agent as law enforcement. He arrived at this conclusion because of the cars that were following her.
 
 
 7
 After hearing that she had been identified, the agent made no further purchases through Mr. Buchanan. However, the informant next approached a Mr. Louis Fennell, whom she had identified to the DEA as another cocaine dealer, and asked to make a cocaine purchase. The informant met Mr. Fennell at his apartment. According to the informant, Mr. Fennell placed a telephone call to a pager. In a few minutes, Mr. Fennell received a telephone call. Mr. Dixon's cellular phone record shows a call to Fennell's apartment. Mr. Fennell then left the apartment, and returned after a period of time with the cocaine. The agents who had Mr. Fennell under surveillance testified that he met with a man driving a white Corvette. Mr. Dixon was seen leaving the area in a white Corvette, one of several cars in his possession.
 
 
 8
 The informant attempted to make another purchase from Mr. Fennell, but he refused. When the informant asked why, Mr. Fennell told her it was "because my man says you hang out with too many police." Record, vol. 7 at 592. Mr. Fennell then described the undercover agent, whom he had never met. Mr. Fennell said that he knew she was police. The undercover agent had previously dealt only with Mr. Buchanan and Mr. Dixon.
 
 
 9
 After Mr. Dixon was arrested, his wife provided keys to a Blazer in Mr. Dixon's possession. Mr. Dixon drove the Blazer at two of the meetings with Mr. Buchanan which occurred when the undercover agent was making cocaine purchases. While a Motorola technician was removing the cellular phone from the Blazer, he found a package of cocaine weighing over a pound. Of the six counts of possession on which Mr. Dixon was convicted, four have to do with the four purchases made by the undercover agent from Mr. Buchanan, one is for the purchase made by the informant from Mr. Fennell and the last count is for the cocaine found in the Blazer.
 
 II. SUFFICIENCY OF EVIDENCE
 
 10
 "Evidence is considered sufficient to support a criminal conviction if, viewing all the evidence, both direct and circumstantial, in the light most favorable to the government, a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Culpepper, 834 F.2d 879, 881 (10th Cir.1987). Mr. Dixon points out that no one ever actually saw him in possession of cocaine and that he denied trading in cocaine when he met with the undercover agent. He further argues that his meetings with Mr. Buchanan and Mr. Fennell were consistent with the innocent conduct of his vending machine business. However, the facts recited above, even without the remaining incriminating details presented at trial, are clearly sufficient to support the jury's verdict.
 
 
 11
 Mr. Dixon also argues that the indictment alleges a single conspiracy while the evidence showed, if anything, two separate conspiracies. He claims that this variance is fatal to the indictment. He also points out that his co-defendant, Mr. Fennell, was convicted of conspiracy, but was acquitted of the single possession count against him. That possession count arose out of the single purchase allegedly made by the informant from Mr. Fennell, which was allegedly supplied by Mr. Dixon. Mr. Dixon contends that "the acquittal of Fennell factually precludes Dixon's conviction on Count 6 (possession) and would create a fatal variance between the conspiracy count (count one) contained in the indictment and the proof at trial." Brief for Appellant at 29.
 
 
 12
 A variance between indictment and proof may be fatal "if it 'affects the substantial rights of the accused.' " United States v. Record, 873 F.2d 1363 (10th Cir.1989) (quoting United States v. Morris, 623 F.2d 145, 149 (10th Cir.), cert. denied, 449 U.S. 1065 (1980). Here, even assuming that the indictment should have charged two conspiracies, Mr. Dixon was not prejudiced. Disregarding the evidence suggesting a conspiracy between Mr. Dixon and Mr. Fennell, overwhelming evidence was presented of a conspiracy between Mr. Dixon and Mr. Buchanan. If the conspiracy with Mr. Fennell had been separately charged, as Mr. Dixon contends it should have been, he may have been convicted of two counts of conspiracy, rather than one. Thus, even if a variance existed, the net result is that he was convicted of only one count of conspiracy--not two. Mr. Dixon's substantial rights were not affected by this result.
 
 
 13
 We similarly reject Mr. Dixon's argument that his conviction on the possession count for which Mr. Fennell was acquitted cannot stand. Verdicts which are inconsistent or logically incompatible are not rendered invalid. See United States v. Powell, 469 U.S. 57; United States v. Beitcher, 467 F.2d 269, 274 (10th Cir.1972). Sufficient evidence existed to convince a jury that Mr. Dixon participated in the drug transaction charged.
 
 III. PRIOR BAD ACTS EVIDENCE
 
 14
 Mr. Dixon claims that the government introduced evidence of other bad acts occurring outside the conspiracy charged. He further claims that even if the evidence was properly admitted under Fed.R.Evid. 404(b), it was prejudicial under Fed.R.Evid. 403. The evidence to which he refers is testimony regarding Mr. Buchanan's statements to the undercover agent during the first drug sale. Mr. Buchanan discussed drug transactions which had occurred in a four-month period prior to the first sale to the agent.
 
 
 15
 Mr. Dixon objected to the admission of Mr. Buchanan's co-conspirator statement in a pre-trial motion, but not on 404(b) or 403 grounds. Thus, we review for plain error. Smith v. Atlantic Richfield Co., 814 F.2d 1481, 1486 (10th Cir.1987). The first drug purchase by the undercover agent took place on May 1, 1989. At that time, Mr. Buchanan spoke of prior sales which had taken place in the previous four-month period. The indictment charged Mr. Dixon with a conspiracy "[f]rom an unknown date but at least by the month of January 1989...." Record, vol. 1, doc. 1 at 1; doc. 31 at 1. Thus, the co-conspirator statements admitted were direct evidence of the conspiracy charged, and their admission was not plain error. Nor was there plain error based on prejudice to Mr. Dixon.
 
 
 16
 The order of the district court is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3